Amended Complaint

$350 RBS

Additional Co-defendant
- Robert Ruffolo
- JoAnn Scatina
- Theresa Hultin
- Appavu Chandrasekaran

as listed under 3.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Sayed Elmarakby Vs. Wyeth Pharmaceuticals and

COMPLAINT FOR DAMAGES FOR TORTIOUS BREACH OF EMPLOYMENT
AGREEMENT AND DEMAND FOR JURY

**FIRST CAUSE OF ACTION**
**Against Wyeth Pharmaceutical for Tortious Breach of Employment Agreement**

1. The name and capacity of defendant named herein, Wyeth Pharmaceuticals, is what is known to plaintiff throughout his employment. Plaintiff will amend his Complaint if other names and capacities have been ascertained.

2. Plaintiff alleges that at all material times Wyeth Pharmaceuticals was and is a corporation duly organized and existing under the laws of the State of Pennsylvania. By reason of the following facts, Wyeth Pharmaceuticals at all material times was and is noticeably and sufficiently present in Pennsylvania to constitute a principal place of business in the State of Pennsylvania; Wyeth Pharmaceuticals owned extensive property, established, maintained, and operated a regional headquarters and employed thousands of residents of the State of Pennsylvania to conduct its business.

3. At all material times additional defendants, Robert Ruffolo, Jr, Joan Scatina, Theresa Hultin and Appavu Chandrasekaran were employees and agents of defendant, Wyeth Pharmaceuticals, acting in a managerial capacity within the scope of their authority, except otherwise alleged herein, whose action and conduct within the scope of their authority were known to, authorized and ratified by defendant, Wyeth Pharmaceuticals.

4. On March 4, 2002 the plaintiff, pursuant to an agreement partly oral and partly written, commenced employment with defendant, Wyeth Pharmaceuticals in Collegeville, Pennsylvania for as long as he performed satisfactorily and obeyed all reasonable and lawful directions and rules of his employer. Plaintiff was employed continuously by defendant, Wyeth Pharmaceuticals until he was charged on June 1, 2007. He performed his dues satisfactorily, was loyal and trusted employee and obeyed all rules and regulations of his employer. By reason of his satisfactorily performance he was given periodic merit increases in compensation and promoted from his original position as Senior Research Scientist I to the position of Principal Research Scientist at the time of his discharge. All his annual reviews indicated that he solidly met or exceeded expectations for his position. By reason of the length of plaintiff's satisfactorily service to his employer (over five years), the absence of performance criticism, his employer's expressed and implied policies, including financial and other incentives to remain in defendant's

1

employment and reject opportunities for other employment, periodic merit raises, bonuses, and promotions, plaintiff reasonably expected and defendant impliedly promised employment until normal retirement without arbitrarily and without a good cause terminating plaintiff's employment. Nevertheless, on May 18, 2007 defendant, Wyeth Pharmaceuticals placed the plaintiff on indefinite suspension without reporting to work and on June 1, 2007 arbitrarily discharged plaintiff and without good cause. At no time before such discharge did defendant, Wyeth Pharmaceuticals give plaintiff:

- Any warning or notice of any cause for suspension or discharge.
- Provide plaintiff an opportunity to respond to any causes for suspension and discharge.
- Any hearing or permitting plaintiff any time whatsoever to correct alleged deficiencies.
- Considered any alternatives or other disciplinary actions to terminating plaintiff employment

All of the above in violation of defendant, Wyeth Pharmaceuticals, established policies, procedures, custom and practice. In acting as alleged, defendant, Wyeth Pharmaceuticals, wrongfully and unreasonably breached expressed and implied promises and its duty implied in the employment agreement to deal fairly and in good faith with plaintiff.

Wrongful Discharge - In addition to violating the discrimination statute [SECOND CAUSE OF ACTIONT], the employment termination action by my employer was wrongful in the manner and process (or lack thereof) by which it occurred. In this case, the termination was without good cause and contrary to reasonable expectations and good faith in fair dealing.

Above and beyond the discriminatory acts, plaintiff's claim here is further asserted based on the fact that the termination was in response to and in retaliation for "refusing" to accept an identity theft incident [See THIRD CAUSE OF ACTION] committed against plaintiff through the human resources files that should be kept in confidence by my employer. The company's refusal to correct or investigate an unlawful, erroneous and unauthorized access to plaintiff's wife and children personal data in the defendant's human resources file prompted him to request management intervention, which was used as a pretext for termination. This is supported by the questionable circumstances under which employment termination occurred, in addition to the company's repeated refusal to provide the conduct policy allegedly violated causing suspension followed directly by termination without any opportunity to respond.

5. In entering into and continuing the employment relationship, plaintiff sought to obtain financial stability, peace of mind, and future security. defendant, Wyeth Pharmaceuticals, knew at all material times that because of Plaintiff's age, family financial responsibilities and children college education expenses at the time of discharge that plaintiff was extremely vulnerable to substantial harm from termination of his employment and was inherently in an unequal bargaining position with defendant, Wyeth Pharmaceuticals. The plaintiff placed trust in the defendant to act and deal fairly and in good faith towards plaintiff.

2

6. As a direct and legal result of the conduct of defendant, Wyeth Pharmaceuticals, plaintiff sustained economic losses, including past and future compensation, and loss of other economic benefits. Plaintiff has also suffered loss of financial stability, had to liquidate pensions and virtually all retirement funds, loss of peace of mind and fear of losing home that shelters his family (spouse and children). Furthermore, plaintiff has suffered embarrassment, humiliation, mental anguish and emotional distress, all to his detriment. Damages are not fully ascertained but they are within the jurisdiction of this court. When such damage sums have been ascertained, plaintiff will amend his Complaint accordingly.

7. Notwithstanding the knowledge as alleged, defendant, Wyeth Pharmaceuticals, acted oppressively, maliciously, fraudulently, and outrageously towards plaintiff, with conscious disregard for his known rights and with the intention of causing, or willfully disregarding the strong probability of causing unjust, and cruel hardship to plaintiff and his family, and discharged him as alleged. In so acting, defendant, Wyeth Pharmaceuticals, intended to and did vex, injure and harm plaintiff. Taken together, this points out to several violations by the employer including, among others:

- Promises of fair treatment
- Promises of warning before termination
- Promises of progressive discipline
- Promises of open door policy

## SECOND CAUSE OF ACTION
### Against Wyeth Pharmaceutical for Discrimination AND Retaliation in Violation of Title VII

8. Plaintiff realleges each and every allegation contained in his First Cause of Action as though set forth again in full.

9. On January 7, 2008, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission, EEOC, pursuant to Title VII, of the Civil Rights Act of 1964, as amended charging defendant, Wyeth Pharmaceuticals, with discharging him because of his National Origin/Ethnicity AND in Retaliation for complaining about the defendant's discriminatory actions, thus committing an unlawful employment practice in violation of such statute. Efforts of reconciliation have been attempted but were failed. On January 31, 2009 the agency notified plaintiff of his right to file the within cause of action alleging such charge of discrimination. By reason of the conduct of the defendant as alleged herein, plaintiff has already incurred legal expenses in connection with this case and is attempting to retain attorneys to

3

prosecute the within action. Plaintiff is therefore, entitled to reasonable attorneys fees and litigation expenses, in addition to other damages as provided by law and as alleged herein.

In March 2005, plaintiff reported a complaint of discrimination and hostile work environment to R. Ruffolo Jr, President of Wyeth Research. Subsequent to plaintiff's complaint, which nothing was done about it, the discriminatory acts have become progressively worse and the plaintiff's work environment has become increasingly hostile and intolerable.

Early in 2007, plaintiff again relayed his concern and complained to his manager, Mr. A. Chandrasekaran about the hostile work environment to which his manager responded: People in this department believe that you fit a "Certain Profile" and they act on it adversely based on this assumption. When the plaintiff's expressed his concern with this way of thinking, being misguided and unfair and the statement in and of itself, he was told by his manager, Mr. Chandrasekaran that, "As they say, "You cannot Fight City Hall" "You will lose".

Given plaintiff's prior, well documented, complaint of discrimination, the termination action occurring under highly questionable circumstances where the defendant used a vague conduct policy and failed to provide any information as to what provisions, if any, of Wyeth policy were allegedly violated and how and on what basis a discipline of "employment termination" was determined, and in the absence of any legitimate non-discriminatory reason for the severe employment action, this was clearly a pretext to cover up the discriminatory nature of the termination.

Highlights of the discriminatory treatment are summarized by the following categories and detailed incidents below:

Profiling: As illustrated in the clearest terms by plaintiff's own supervisor's words to him when he complained previously about disparaging treatment where the supervisor said: People in this department believe that you fit a "Certain Profile" and they act on it adversely based on this assumption – When the plaintiff's expressed his concern with this way of thinking and the statement in and of itself, he was told by his manager: "You cannot Fight City Hall" "You will lose". In another occasion, the supervisor said, they will eventually make you leave. The profiling referred to by plaintiff's supervisor as described above is interpreted as plaintiff's national origin/ethnicity, since he is an otherwise a United States' citizen of good standing in every sense of the word! Yet, the working environment was constantly threatening to plaintiff and full of daily hostilities. A sense of fear and the circulation of false profiling portraying plaintiff's in false light in the public eye as "unpatriotic or worse" was being spread around that again can only be based on plaintiff's foreign national origin and stereotyped ethnic and religious background.

Prior Complaints of Discrimination: As stated earlier, plaintiff previously reported the discriminatory acts and civil right violations to his employer, defendant, on 3/7/2005, directing the complaint to R. Ruffolo, President, Wyeth Research. Since his complaint and until his

4

termination, the discriminatory acts got worse and he was treated in a very hostile way in the work place. The negative retributions from that were obvious and were sustained and retaliations in various forms were evident.

<u>Differential Treatment</u>: Examples of harassment, hostile work environment and differential treatment are cited below:

Pointedly and Offensive "Escort" by Wyeth Security
For the later few years of plaintiff's employment with Wyeth, and on virtually a daily basis, he was subjected to a pointedly, shadowing, and offensive "escort" by Wyeth security marked cars, and often other non-marked cars, as well, as he entered Wyeth property and parking lot for his daily work. Same gets to be repeated at the end of the work day. This was a clearly consistent harassing pattern that has been occurring for several years and continued to take place until his last day (termination). It always involved plaintiff and targeted his vehicle – never been observed with other employees and clearly was not a random act.

On another occasion, a pointed act by the Wyeth research building where plaintiff worked - as he opened the outside entrance door, tinted glass, a startling and immediate presence of a fully uniformed and armed police officer virtually bumping into him in an intimidating way. This was perfectly timed, ambush like, as plaintiff entered to start his work day, very unusual occurrence – intimidating! And being aimed at and harassing a "Loyal, Patriotic American" Citizen, <u>And</u> Proud of It".

Numerous of such and similar acts were also previously communicated to Wyeth through plaintiff's prior complaint sent to the attention of R. Ruffolo, President of Wyeth Research in 2005. Unfortunately, the majority of such acts continued to occur, never stopped, and in many instances, it got worse. For others, plaintiff voluntarily had to give up such basic conveniences that other employees take for granted, such as permanently refraining from going to Wyeth cafeterias for lunch to avoid the constant harassment that he was being subjected to, on a daily basis, there. Communications with his group director, T. Hultin document these patterns.

<u>In Your Face – Harassment Watch</u> The daily intimidation by Wyeth security in the parking lot did not end there – A certain director in the department (Vikram) made the point of being by the building entrance door exactly as plaintiff is entering in the morning and literally "brush" into his office door as he was leaving for the day – frequent, consistent, unapologetic and harassing occurrences. Same person made an unsolicited comment to plaintiff in the building elevator once saying "if one is unhappy at work, they should leave". Plaintiff ignored the comment and gave no response. It was clear that every effort was being made to make the work environment as hostile as can be. Because plaintiff was patient and tolerated the hostility hoping for improvement someday, his employer, defendant, was constantly looking for any pretext to terminate his employment.

5

Numerous additional acts of clearly discriminatory nature, and creating an offensive work environment, that are wide ranging from religious, personal to technical in nature, are well documented. These included disparate and differential treatment regarding computer equipment upgrades, access to department SOPs, and segregated phone and e-mail basic services which were <u>uniquely different</u> for plaintiff compared to everyone else in the department.

<u>Promotions</u>
Based on peer comparison, plaintiff's promotion was substantially delayed. Details involving grades, frequency and timing for the promotions within the department support this fact.

<u>Verification of Employment</u> – Under pretense of an "Audit" for work eligibility, plaintiff was subjected to a constant harassment pattern and received a barrage of endless e-mails and phone calls despite it being known that the plaintiff was a "United States Citizen". Plaintiff has already furnished all the documents requested for employment eligibility purposes more than five years earlier at the start of his employment. Plaintiff still offered and indeed brought all eligibility documents to his manager's office and offered to go to any Wyeth human resources office with the documents but the harassment continued and the source requesting the documents was never revealed to plaintiff and the manager refused to confirm that it was a Wyeth source who requested the information. The audit exercise may have been directed at non-U.S. citizens but I still was targeted for harassment despite admission by the defendant that my documents clearly identified me as a U.S. citizen.

## 10. RETALIATION

As stated earlier, plaintiff previously reported unlawful discriminatory practices against him t his employer on 3/7/2005, directing the complaint to R. Ruffolo, President, Wyeth Research. Since his complaint and until his termination, the discriminatory acts got worse and he was treated in a very hostile way at the work place. Shortly AFTER his complaint of discrimination, he was later, in a revision of history, accused of behavioral problems. Defendant clearly did not distinguish between accepting discrimination and humiliation in silence and voicing protest and complaining so as to stop the discriminatory acts. Further, plaintiff has since suffered delayed promotions and a constant and hostile scrutiny. A few examples follow:
- Shortly after his complaint, his department head, JoAnn Scatina, Vice President, refused to talk to him when he approached her regarding clarification of the matter and she said "Get out of my office" your immediate supervisor will handle this. This was highly unusual in adversely interacting with a senior scientist, a clear changed attitude that was a direct result to my complaint. Prior to that a very cordial and mutual interaction was the norm.
- Off-site Meetings: After being given a leading role as a senior scientist in these periodic departmental meetings, no roles were delegated to plaintiff even in sub-groups or he was omitted altogether.
- Report reviews & submissions: Extended, unexplained and unjustified delays in the review process of plaintiff's work, meant to cause intentional infliction of emotional distress – A typical review of 2-3 days (prior to the discrimination complaint) were extended to several weeks or

even months – This was especially true for career enhancing works such as publications and scientific symposia reviews and presentations.
- Cooperative working relationships: Substantially-delayed responses. Given the nature of the multi-disciplinary projects in the pharmaceutical field, reliance on data and feedback from others is key to the success of plaintiff's daily work. Plaintiff observed a transition from a typical 15-30 min e-mail response to several days or no responses at all. A salient example was a submission of patent data packages for quick reviews and plaintiff being the principal author, his recent review requests were never acknowledged contrary to his earlier experience (prior to the discrimination complaint) with such interaction..
- To summarize, plaintiff was systematically excluded from meetings and was virtually being left out of the loop in departmental and group matters altogether.

THIRD CAUSE OF ACTION
Against Wyeth Pharmaceutical for Negligent or Intentional Infliction of Emotional Distress

11. Plaintiff realleges each and every allegation contained in his First Cause of Action as though set forth again in full.

12. In addition to the foregoing conduct, the following examples demonstrate some of the outrageous conduct on the defendant's behalf, thus inflicting emotional distress against plaintiff:

- Identity Theft - This relates to an incident that involved plaintiff's request of an investigation and records correction stemming from an unauthorized, erroneous and unlawful access and alteration of his confidential employee files of his wife and children personal and confidential data. Plaintiff's complaint went unanswered with no records corrected or corrective measures taken for more than 6 months. In fact, the records were not corrected as of one year (after employees termination) and possibly to this day.

  Not only the modification of plaintiff's confidential records was unlawful, it also constituted the use of an intimidating veiled threat by using "Disabled Dependent" as part of the unauthorized additional entry to his records. In this case, the purpose of granting an employee protection is not merely a protection of an individual's self interest but also to avoid undermining the public policy of protecting employees' confidential records and preventing identity theft in the work place. In other words, this reflects a common concern that a public policy, in relying on protection of confidential human resources data, will be undermined if the employment termination could stand with impunity.

  Plaintiff discussed above incident with his group director, T. Hultin, and in details with his manager, A. Chandrasekaran, as follows:

7

Following this discussion, his manager requested that plaintiff communicate, in writing, the identity misrepresentation that was explained to him verbally prior to him deciding whether or not it merits a follow up by manager. Plaintiff wrote the incident and communicated it by e-mail per manager's request. Manager replied in writing promptly dismissing the incident. Plaintiff replied stating that a follow up was needed to investigate of how and by whom the unauthorized, erroneous and threatening access entries were made to plaintiff's confidential HR records. There was no reply at that time.
(All e-mails and communications relating to and/or documenting any of the above incidents are well documented).

Despite efforts by plaintiff in relaying the incident to HR Center 800 number, his group director, his manager, orally and in writing, the defendant, Wyeth Pharmaceuticals failed to investigate, correct and deal with the plaintiff's complaint regarding the identity misrepresentation involving an erroneous unauthorized entry of "Disabled Dependent", which does not exist, with the same last name in plaintiff's confidential records, thus causing and intentionally inflicting emotional distress on the plaintiff's part. Plaintiff's claim is further asserted based on such failure.

Plaintiff did not pursue the above incident further with HR management for fear of a similar hostile and unfavorable reaction from the supervisor and department management as previously happened following his prior complaint to R. Ruffolo, President of Wyeth Research. The negative retribution from that earlier complaint was obvious and was sustained - Plaintiff did not wish to invite further negative acts and disfavors and requested the presence of a human resources or department's management on further discussion of the issue.

- Other individual incidents of discrimination and harassment included a slashed tire of plaintiff's vehicle in Wyeth's gated facility parking lot during plaintiff's working hours despite it being in perfectly good working conditions following his morning commute. Wyeth security desk phone records to the automotive repair service would support the incident.

- Computer Disruption - Numerous computer disruptions, frozen function induced by "remote management" that disrupted plaintiff's daily work – some of which were timed to miss deadlines for his reports or disrupt a career enhancing scientific journal publications – he repeatedly communicated this to his supervisor.

- Under pretense of an "Audit" for work eligibility, plaintiff was subjected to a constant harassment pattern and received a barrage of endless e-mails and phone calls despite it being known that the plaintiff was a "United States Citizen". Plaintiff has already furnished all the documents requested for employment eligibility purposes more than five years earlier at the start of his employment. Plaintiff still offered and indeed brought all eligibility documents

8

to his manager's office and offered to go to any Wyeth human resources office with the documents but the harassment continued and the source requesting the documents was never revealed to plaintiff and the manager refused to confirm that it was a Wyeth source who requested the information. The audit exercise may have been directed at non-U.S. citizens but I still was targeted for harassment despite admission by the defendant that my documents clearly identified me as a U.S. citizen.

- Office Meetings – Plaintiff's immediate supervisor, Mr. A. Chandrasekaran, insisted that plaintiff inform him and specify the exact hour and minute that plaintiff may come to his office – This was unique to plaintiff. For everyone else in the group, they may "drop by" at any time unannounced. The visit down the hallway to his office was always with a full "Escort" from a security personnel or "certain" department directors – Humiliating!

Another humiliating practice that went on for virtually the entire year of 2006 typically involved a request by plaintiff's supervisor to his office then closes the door entirely, get engaged in a substantive or non-substantive discussion of work or non-work related matters seemingly to fill time until either a phone call or a knock on the door at which time he then was free to "Release Plaintiff". A consistent humiliating pattern that made plaintiff feel that he was "Criminal - Enemy Number 1" at his work place and that they could literally imprison him at will and against his will.

Plaintiff remarked to his manager once by saying that he was only tolerating this humiliating treatment to support his wife and children because the family needs his job. Manager was aware that one of plaintiff's children was to start college in the fall of 2007 and another child shortly thereafter. Plaintiff strongly believes that the timing of his termination was meant to inflict intentional emotional distress.

- Report Reviews & Submissions: Extended submissions: Extended, unexplained and unjustified delays in the review process, meant to cause intentional infliction of emotional distress – A typical review of 2-3 days were extended to several weeks or even months – This was especially true for career enhancing works such as publications and scientific symposia reviews and presentations.

## FOURTH CAUSE OF ACTION
### (Against Defendants for Conspiracy)

13. Plaintiff realleges each and every allegation contained in his First Cause of Action as though set forth again in full.

9

14. In acting as alleged herein, defendant, Wyeth Pharmaceuticals, conspired with each defendant mentioned in this Complaint to commit the tortuous conduct alleged herein and by reason of such conspiracy and concerted efforts by defendants, plaintiff has been damaged as alleged.

WHEREFORE, plaintiff prays for judgment against defendant, Wyeth pharmaceuticals as follows:

1. For Compensatory damages according to proof.
   (Loss of past and future compensation and fringe benefits)
2. For an assessment of punitive damages according to proof.
3. Remedies compensating for emotional distress as a result of discrimination and discharge.
4. For such further relief as may be proper.

## DEMAND FOR JURY

Plaintiff hereby demands a jury in the above-entitled action.

Date:  April 27, 2009

_____
Plaintiff
Sayed Elmarakby

_____
Attorney for Plaintiff
To be Named