# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SAYED ELMARAKBY,<br>                    Plaintiff<br><br><br>                v.<br><br>WYETH PHARMACEUTICALS,<br>ROBERT RUFFOLO, JR, JOANN<br>SCATINA, THERESA HULTIN, AND<br> APPAVU CHANDRASEKARAN,<br>                    Defendants | : <br> : <br> : <br> : <br> : <br> :     No. 09-1784 (RBS)<br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## PLAINTIFF'S RESPONSE OPPOSING DEFENDANTS' 12(b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

S. Elmarakby, *pro se*

4 Sheffield Way,
Newtown, PA, 18940

## TABLE OF CONTENTS

**Page**

BACKGROUND................................................................... 1

ARGUMENT....................................................................... 2

A. Standard for Determining This Motion..................................... 2

B. Sufficient Acts and Facts Have Been Stated to Establish the Claim
   Of Breach of Contract/Wrongful Discharge............................... 4

C. Sufficient Acts and Facts Have Been Stated to Establish the Claim
   Of Wrongful Discharge..................................................... 6

D. Sufficient Facts Have Been Stated to Establish Actionable
   Title VII Claims............................................................ 7

E. Sufficient Facts Have Been Stated to Sustain a Claim for
   Intentional Infliction of Emotional Distress............................ 10

F. Sufficient Facts Have Been Stated to Sustain a Claim for
   Conspiracy.................................................................. 11

GENERAL CONSIDERATION.................................................. 13

CONCLUSION.................................................................... 14

ADDENDUM

EXHIBITS A, B, C, D, E

## TABLE OF AUTHORITIES

**Page**

Aholelei v. Dept. Of Public Safety,
488 F. 3d 1144, 1149 (9th Cir. 2007) ........................................... 13

Albright v. Oliver,
510 U.S. 266, 114 S. Ct. 807, 810, 127 L. Ed. 2d 114 (1994) ............... 4

Amoco Fabrics & Fiber Co. v. Hilson,
669 So 2d 832 (Ark. 1995) ...................................................... 6

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..................... 12

Armano v. Federal Reserve Bank of Boston,
468 F. Supp 674 (D. Mass. 1979) ............................................... 10

Ashcroft v. Iqbal,
-U.S. – 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)..................... 3

Bakken v. North American Coal Corp.,
641 F. Supp. 1015 (D.N.D. 1986) ............................................... 12

Barlow v. Marion City. Hospital Dist.,
495 F. Supp. 682 (M.D. Fla. 1980) .............................................. 12

Bell Atlantic Corporation Corp. v. Twombly,
550 U.S. 544, 555-56, 127S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)...... 3,4

Burlington Northern v. White,
---U.S.---, 126 S. Ct. 2405 (2006); 126 S. Ct. 2415............................ 9,10

Celotex Corp. v. Catrett,
477 U.S. 317, 106 s. Ct. 2548, 91 L. Ed. 2d 265 (1986) ....................... 12

Chapman v. Adia Services,
688 N.E. 2d 604 (Ohio 1997) ................................................... 7

Cipriano v. Bd of Education Cty. School Dist.,
785 F.2D 51 (2D Cir. 1986) .............................................….....…… 12

# TABLE OF AUTHORITIES
## (Continued)

Coffin v. South Carolina Dept of Soc. Serv.,
562 F. Supp. 579 (D.S.C. 1983) ................................................. 12

Conley v. Gibson,
355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)......................... 3,4

Cronin v. Bradley,
795. F.2d 310 (3rd Cir. 1986) .................................................. 12

Estelle v. Gamble,
429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ..................... 13

Erickson v. Pardust,
127 S. Ct. 2197 (2007) ......................................................... 4,13

Erickson  v. Pardus,
551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)........... 4,13
(per curiam); 127 S. Ct. 2197

Fitzgerald v. Barnstable Sch. Comm.,
U.S. 129 S. Ct. 788, 792, 172 L. Ed. 2d 582 (2009) ........................... 3

Haines v. Kerner,
404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96, 30 L. Ed. 2d 652 (1972)........ 13

Henry V. Daytop Village, Inc.,
42 F.3d 89, 95 (2d Cir. 1994) ................................................. 13

Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority,
103 F.3d 1165, 1175 (3rd Cir. 1997) .......................................... 12

Jackson v. Birmingham Bd. of Educ.,
544 U.S. 167, 170-71, 125 S. Ct. 1497, 1502-03, 161 L. Ed. 2d 361 (2005).. 3

Kaltenbach v. Richards,
464 F.3d 524, 526-7 (5th Cir. 2006) .......................................... 3

Lukosi v. Sandia Indian Mgmt. Co.,
748 P. 2d 507 (N.M. 1988) .................................................... 6

# TABLE OF AUTHORITIES
## (Continued)

Miller v. U.S.,
530 f. Supp. 611 (E.D. Pa. 1982) ........................................................ 14

Minger v. Green,
239 F. 3d 793, 799 (6th Cir. 2001) ..................................................... 3

Neitzke v. Williams,
490 U.S. 319, 327, 109 s. Ct. 1827, 104 L. Ed. 2d 338 (1989) ..................... 4

Padre Shipping Inc. v. Yong He Shipping,
553F. Supp. 2d 328, 333 (S.D. N.Y. 2008) ............................................ 13

Petermann v. Int'l Broth. Of Teamsters,
Local 396, 344 P. 2D 25 (Cal. 1995) ................................................... 7

Robinson v. Shell Oil Co.,
519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808.   ........................... 10

Rodriguez v. Doral Mortg. Corp.,
57 F. 3d 1168, 1171 (1st Cir. 1995) .................................................. 3

Rodriguez-Suris v. Montesinos,
123 F.3d 10, 20 (1st Cir. 1997) ....................................................... 12

Schewer v. Rhodes,
416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) .............................. 4

Skaff v. Meridien North America Beverly Hills, LLC,
506 F. 3d 832, 839 (9th Cir. 2007) .................................................... 3

Swierkiewicz v. Sorema N.A.,
534 U.S. 506, 508, 122 S. Ct. 992, 152, L. Ed. 2d 1 (2002) ..................... 3,4

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308, 322, 127 s. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) ............ 3

Toussaint v. Blue Cross & Blue Shield of Michigan,
292 NB.W. 2d 880 (Mich. 1980) ...................................................... 6

Wagenseller v. Scottsdale Mem. Hosp.,
710 P. 2d 1025 (Ariz. 1985) .......................................................... 6

# TABLE OF AUTHORITIES
## (Continued)

Williams v. Seniff,
342 F. 3d 774 (7th Cir. 2003) ........................................................   12

Vermillian v. AAA Moving & Storage,
704 P. 2d 1360 (Ariz. 1985) ........................................................   7

Zaccardi v. Zale Corp.,
856 F. 2D 1473 (10th Cir. 1988) ........................................................   5

# RULES, STATUTES, AND MISCELLANEOUS

Rule 4(m)..................................................................................... 2

Rule 8......................................................................................... 2

Rule 8(a) ................................................................................... 3

Rule 9(b) ................................................................................... 3

Rule 23.1................................................................................... 3

Rule 12(b)(6)............................................................................. 1,2, 4

The Private Securities Litigation Act of 1995..................................... 3

See applicable Pennsylvania law:
Statutory 23 Pa. C.S. § 4326 (c), 40 Pa. C.S. § 6302, 40 P.S. §§ 764b, 764c,
768, 771, 772, 776.3, 908-1 to 908-5, 991.2111, 991.2117, 991.2301
to 991.2361, 1502, 1511, 1552, 1553, 1554(b)(1), 1554(b)(3) (i) to (iii),
1556.1(a), 1560(f), 3002, 3204, 3502, 3503, 3506 or applicable Pa codes.......... 7

During the course of these legal proceedings,
Wyeth merged with Pfizer as of October 15, 2009 and now is known as Pfizer..... 7

Moore's, January 2010, Issue 1. ..................................................... 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

No. 09-1784 (RBS)

SAYED ELMARAKBY,

                      Plaintiff

      v.

WYETH PHARMACEUTICALS,
ROBERT RUFFOLO, JR, JOANN
SCATINA, THERESA HULTIN, AND
APPAVU CHANDRASEKARAN,

                    Defendants

| |
|---|
| PLAINTIFF'S RESPONSE OPPOSING DEFENDANTS' 12 (b)(6) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT |

Plaintiff submits this response in opposition to defendants' 12 (b)(6) motion for dismissal of plaintiff's amended complaint.

**BACKGROUND**

In 2005 and again in late, 2006 and early 2007 plaintiff reported complaints of discrimination and a hostile work environment to his employer, Wyeth Pharmaceuticals. The complaints were never resolved, culminating in indefinite suspension followed by termination of his employment on June 1, 2007.

On November 17, 2007 plaintiff filed a complaint with the EEOC against his employer to which a formal charge was issued by the EEOC on January 7, 2008. Surprisingly, the defendants' motion described the EEOC investigation as "lengthy". This is in view of the fact that the company was requested by the EEOC to answer the charge by March 14, 2008. The company, exhibiting bad faith throughout, never sent any response until October 30, 2008. A delay of over 7 months! for the 30-day response request, notwithstanding a brief mediation attempt in the interim that took less than three hours to conclude and which the company approached with a total lack of sincerity despite the plaintiff's good faith efforts towards the proceedings and his genuine desire for a resolution. EEOC proceedings were concluded with the issuance of a "right to sue letter" on January 30, 2009 and stated that the EEOC "does not certify that the respondent [employer] is in compliance with the statutes" and indicated that "no finding is made as to any other issues that might be construed as having been raised by this charge". Furthermore, the EEOC did not agree with the defendants' assertion in their motion that

[The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC]. This option, despite being available to the EEOC in their determination was not chosen, indicating a disagreement with the pending motion.

On April 27, 2009, a *pro se* complaint was timely filed in this court, naming Wyeth and additional co-defendants. Because of a technicality only one summons was issued by the clerk of court for "Wyeth" but not for the other co-defendants. Upon enquiry, plaintiff was advised by the clerk that the complaint was to be amended to include the names of the co-defendants in the "heading" of the complaint (they were named in the first page) so that summons may be issued for each individual defendant. Not a single word in the original pleading was changed or revised. The amended complaint, therefore, remained intact and identical in content to the original pleading. Despite the confusing statement in the defendants' motion, the complaint was served upon all defendants, in a timely manner on August 19, 2009 according to Rule 4 (m).

## ARGUMENT

In opposition to the defendants' 12 (b)(6) motion, which seeks dismissal of plaintiff's claims of breach of contract/wrongful discharge; discrimination and retaliation in violation of Title VII; intentional or negligent infliction of emotional distress; and conspiracy, the following is noted:

### A. Standard for Determining This Motion

Historically, the standard for granting a 12(b)(6) motion has been extremely demanding. A motion to dismiss for failure to state a claim tests the sufficiency of a party's claim for relief, i.e. the sufficiency of a pleading. Under Rule 12 (b) (6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support an otherwise cognizable legal claim. The plaintiff's amended complaint satisfies both criteria and the motion to dismiss is not warranted as presented below:

1. The plaintiff's claims, as stated in the amended complaint, met all essential elements required to meet the notice pleading requirement of rule 8. The test sufficiency of the pleading has been clearly met as it provided a fair notice to defendants with well-

established legal claims, and included sufficient facts above and beyond the "plausibility" threshold in support of these claims. The plaintiff made a demand for judgment and identified the remedies desired. Damages are not fully ascertained but they are within the jurisdiction of this court. A sum certain is not required in the demand.

2. The pleading satisfies the "short" and "plain" requirement, Rule 8(a), and does not fall under the 3 special categories[1] where more detailed pleading is required. In addition, the plausibility standard does not require that the claims appear likely or even "probably" to be true, and contrary to what may be inferred from statements in the defendants' motion, detailed factual allegations are not necessary whether applying Twombly[2] or Conley[3] standards.

3. The fundamental tenor of the Rules is one of liberality rather than technicality[4], and because courts must construe pleadings "so as to do justice", all pleadings are construed liberally[5] and so long as the pleading provides the adverse party with proper notice of claims, which this pleading does, it shall not be construed hyper-technically.

4. The rules generally impose a more lenient pleading legal obligation and rely on discovery and/or summary judgment, rather than pleadings, to flesh out the disputed facts and cull unmeritorious cases[6].

5. The defendants in their motion state "The countless interwoven legal conclusions may not be accepted by this court as true". Plaintiff cites that when a claim is challenged under this Rule, the court construes liberally in the pleader's favor[7]. The court presumes that the allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party[8]. No claim will

---

[1]  Rule 9 (b), Rule 23.1, and The Private Securities Litigation Reform Act of 1995.
[2]  Bell Atlantic Corporation Corp. v. Twombly, 550 U.S. 544, 555-56, 127S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), See also Ashcroft v. Iqbal, -U.S. – 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

[3]  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)
[4]  See Minger v. Green, 239 F. 3d 793, 799 (6th Cir. 2001).
[5]  See, e.g., Skaff v. Meridien North America Beverly Hills, LLC, 506 F. 3d 832, 839 (9th Cir. 2007); Rodriguez v. Doral Mortg. Corp., 57 F. 3d 1168, 1171 (1st Cir. 1995).
[6]  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 152, L. Ed. 2d 1 (2002
[7]  See Kaltenbach v. Richards, 464 F.3d 524, 526-7 (5th Cir. 2006).
[8]  See Fitzgerald v. Barnstable Sch. Comm., U.S. 129 S. Ct. 788, 792, 172 L. Ed. 2d 582 (2009); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 s. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007), Bell Atlantic Corporation Corp. v. Twombly, 550 U.S. 544, 555-56, 127S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 170-71, 125 S. Ct. 1497, 1502-03, 161 L.

be dismissed merely because of disbelieve of the allegations or feeling that recovery is remote or unlikely[9].

6. With the heavy emphasis by the defendants and their strong reliance on applying the Twombly's plausibility standard, it is worth noting that the supreme court in a later case [Erickson][10], concluded that the case has been improperly dismissed for failure to state a claim: "Specific facts are not necessary; the statement need only 'give the defendants fair notice of what the….claim is and the grounds on which it rests'". This pleading meet both criteria. Legal scholars noted that the quoted language of that line in Erickson suggests that the court was trying to reassure readers that Twombly was not in fact intended to completely overrule the basic Conley "no set of facts approach". Furthermore, in recognition of the strength of 50 years of case law on notice pleading, Congress is currently attempting to eliminate any confusion on the matter where a proposed legislation was recently introduced[11] that would affirm the Conley standard and overrule Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal. The legislation is being considered in the House "Open Access to Courts Act of 2009" [H.R. 4115] and in the Senate "Notice Pleading Restoration Act of 2009" [S. 1504]. While it is noted again that this is a proposed legislative language, the bills, quoted from the Senate version, would provide: "a Federal court shall not dismiss a complaint under Rule 12(b)(6) or (e) of the Federal Rules of Civil Procedure, except under the standard set forth by the supreme court of the U.S. in Conley v. Gibson, 355 U.S. 41 (1957)".

## B. Sufficient Acts and Facts Have Been Stated To Establish the Claim of Breach of Contract /Wrongful Discharge

The plaintiff's claim of breach of contract/ wrongful discharge (termination) is asserted here because the employer (defendants) violated promises contained in the human resources policy manual regarding termination as illustrated below: Specifically, the company, Wyeth Pharmaceuticals, failed to follow a progressive discipline policy expressly contained in the human resources manual governing employees' discipline.

---

Ed. 2d 361 (2005); Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 810, 127 L. Ed. 2d 114 (1994); Schewer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

[9] See Bell Atlantic Corporation Corp. v. Twombly, 550 U.S. 544, 555-56, 127S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 152, L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 s. Ct. 1827, 104 L. Ed. 2d 338 (1989); Schewer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

[10] Erickson v. Pardust, 127 S. Ct. 2197 (2007).

[11] Moore's, January 2010, Issue 1.

The human resources policy (4/1/2004) [See exhibit A] states: *Disciplinary Actions: 1. Verbal Warning – When an employee's conduct becomes unacceptable, the supervisor should inform the employee that his or her conduct is unsatisfactory. The supervisor should counsel the employee as to what specific action is required to meet acceptable job standards and the consequence of further violations* [No verbal warning was given to plaintiff and no specific action was requested of plaintiff to remedy any conduct violation]; *2. Written Warning – if verbal warning does not result in improvement, the supervisor should give the employee a written notice (i.e., put him or her on notice that termination could result if immediate improvement or a change in behavior does not occur). The supervisor should discuss all disciplinary actions with the employee.* [No written warning was given prior to termination and no discussions of disciplinary actions were ever discussed]; *3. Discharge/Termination – The company may discharge an employee in cases – e,g., failure to meet or report violation of established SOPs, performance has not sufficiently improved or where progressive discipline has failed to achieve improvement* [No SOPs violations/performance or attendance issues were alleged. In addition, the progressive discipline policy was skipped in its entirety by the employer]. This despite the fact that the alleged reason for termination (refused to meet with his supervisor), hardly to be viewed as a major offense, would merit the ultimate tangible employment action of termination. Allegation of door slamming and storming out are categorically false. Finally, despite the plaintiff's disagreement with the suspension/termination and repeated calls for review or explanations, the plaintiff was neither given any opportunity to respond nor was he afforded a review as clearly stated in the 2004 policy that employees have the right to a review per the *Assurance of Fair Treatment Policy.*

The company also failed to prepare a human resources memo prior to termination as required (No memo was found in the personnel files of plaintiff provided by the company). Overall the company failed to comply with the stated policy highlighting "*Progressive discipline ensures that an employee is made aware of his or her unacceptable attendance record, conduct or work performance and is given an opportunity to improve*". By failing to follow its own stated policy, the employer is in effect changing what is a due process procedure that employees could and do count on as a matter of procedural fairness. Requiring management to follow a progressive discipline policy in addition to the termination memo requirement were mandatory and specific and a breach of agreement was concluded in similar circumstances.[12] The promises outlined

---

[12]   Zaccardi v. Zale Corp., 856 F. 2D 1473 (10th Cir. 1988).

above, together with other additional consideration constituted a modification of the at-will employment, which is the defendants' basic argument regarding the claim. The additional consideration, which rebuts the at-will relationship, includes the company designed benefit plan for compensation where the benefits are enhanced with longevity to induce employees to stay with the employer. In this case, the plaintiff's stock options compensation was to reach maturation at least one year later. In addition, a significant portion of the plaintiff's such compensation was to reach maturity after 3 years of maturation. Not only that the plaintiff lost all yearly maturation compensation remaining but, more significantly, plaintiff was only a few months away from his 3-year maturation plan when he was terminated. In most states the law will not allow an employer to terminate a worker just before receiving a benefit in order to deprive the worker of the compensation that otherwise could have been received[13]. Courts have accepted that promises made by at-will employers to their employees are as entitled to legal enforcement as any other.[14] Furthermore, if an employee has been required to sign a statement agreeing to be bound by the handbook policy, [which this plaintiff had, as acknowledged by the defendants in their memorandum of law "plaintiff was required to read, understand, sign and comply with the policies set forth in Wyeth's Code of Conduct, including Wyeth's policy regarding disciplinary actions"] - that is considered to be a factor in favor of finding the handbook to be binding on the employer as well[15], not withstanding the existence of a disclaimer.

Finally, the claim should lie based on the well accepted general proposition that whether a personnel manual gives rise to implied contractual obligation is a factual question to be discerned from the totality of parties statements and actions[16], and best resolved by fact finders.

## C. Sufficient Acts and Facts Have Been Stated To Establish the Claim of Wrongful Discharge

The plaintiff's claim of wrongful discharge (termination) is asserted here because the employer (defendants) terminated the plaintiff with willful disregard to public policy. The termination was a direct result and in direct connection to the plaintiff pursuing employment benefits made available to him, i.e., protected activity, which is a well

---

[13]  Amoco Fabrics & Fiber Co. v. Hilson, 669 So 2d 832 (Ark. 1995).
[14]  Toussaint v. Blue Cross & Blue Shield of Michigan, 292 NB.W. 2d 880 (Mich. 1980)
[15]  Lukosi v. Sandia Indian Mgmt. Co., 748 P. 2d 507 (N.M. 1988).
[16]  See, e.g., Wagenseller v. Scottsdale Mem. Hosp., 710 P. 2d 1025 (Ariz. 1985).

recognized category to which public policy tort is applied[17]. The connection between the protected activity and the termination is very clear in as evidenced by the company's citing of the incident as grounds for termination.

Furthermore, the tort is recognized where it applied to cases in which an employee has refused to engage in or in reporting illegal activity[18,19]. Contrary to the defendants' motion assertion that a public policy exception was not invoked, the tampering that occurred in the plaintiff's confidential insurance records [See exhibit B] constitutes an illegal activity[20], for if the employee were to let stand the presence of non-existent "disabled dependent" in his family insurance records, he will be committing a fraudulent and illegal activity. Plaintiff reported and requested correction of the records [See exhibit C], in compliance with the law, the employer did nothing to investigate or correct and when plaintiff complained and requested management intervention, it was used as a pretext and he was then terminated as a direct result of the incident. In fact the plaintiff's insurance records were not corrected by the employer even after plaintiff was terminated [See exhibit D], reflecting the bad faith dealing on the company's part. Finally, the defendants acknowledge that Pennsylvania law prohibits termination in retaliation for a report of "wrongdoing" but claims that the statute applies only to employees of "public body". While it is true that public employees are entitled to procedural due process from their employers, private sector employees of large corporation [Wyeth is currently part of the largest corporation in the U.S.][21] may be entitled to notice and procedural safeguards before termination under the covenant of good faith and fair dealing.

## D. Sufficient Facts Have Been Stated To Establish Actionable Title VII Claims

The plaintiff's claims of Discrimination and Retaliation in violation of Title VII of the Civil Rights Act of 1964 & subsequent Acts are asserted as follows:

a.  Discrimination:

---

[17]  Chapman v. Adia Services, 688 N.E. 2d 604 (Ohio 1997).
[18]  Petermann v. Int'l Broth. Of Teamsters, Local 396, 344 P. 2D 25 (Cal. 1995).
[19]  Vermillian v. AAA Moving & Storage 704 P. 2d 1360 (Ariz. 1985).
[20]  See applicable Pennsylvania law:  statutory 23 Pa. C.S. § 4326 (c), 40 Pa. C.S. § 6302, 40 P.S. §§ 764b, 764c, 768, 771, 772, 776.3, 908-1 to 908-5, 991.2111, 991.2117, 991.2301 to 991.2361, 1502, 1511, 1552, 1553, 1554(b)(1), 1554(b)(3) (i) to (iii), 1556.1(a), 1560(f), 3002, 3204, 3502, 3503, 3506 or applicable Pa codes, as it is beyond plaintiff's (pro se) knowledge at present.
[21]  During the course of these legal proceedings, Wyeth merged with Pfizer as of October 15, 2009 and now is known as Pfizer.

- Contrary to the defendants assertion in their motion, the plaintiff's Title VII claims are timely as they were properly filed with the EEOC and the discriminatory acts, in violation of such statute, were designated "Continuing Action", for the discriminatory acts and incidents occurred literally until the last day of work of the plaintiff's employment. The delayed promotion and the termination are certainly timely. Again, contrary to the defendants assertion, the facts cited in the complaint and in the accompanying brief not only give rise to inference of discrimination, in fact they fall under the direct category where the plaintiff's supervisor made unequivocal statements to that effect, suggesting that plaintiff's national origin, ethnicity, stereotypical cultural background and religion are not being looked at favorably in the plaintiff's work environment, and being used as a basis of discrimination against him. The working environment was constantly threatening to plaintiff and full of daily hostilities. A sense of fear and the circulation of false profiling portraying plaintiff in false light in the public eye were being spread around and can only be based on plaintiff's foreign national origin and stereotyped ethnic and religious background. The unequivocal statement by the plaintiff's supervisor (manager) conferring a stereotypical depiction, together with the disparate and differential treatment in promotion and other tangibles described in the complaint, and the documented past discrimination complaints (2005, 2006), all of which are typically permitted by courts as credible reflections asserting discrimination. Discovery would enable the plaintiff to provide relevant dates and supporting material, for example, a comparative analysis between plaintiff's promotion and last two dates of promotion of his peers, namely Li Shen, Matt Hoffman, Zeen Tong, Sandy Singer, and Adam Schilling would verify plaintiff's claims.
- The plaintiff met the burden of proving that he was a member of <u>a protected class</u> by virtue of satisfying the administrative and procedural hurdle required for an EEOC case proper filing to which the company was a party. It is further noted that as a United States citizen, the plaintiff's country of birth (Egypt), Middle Eastern, African has qualified him for the protection afforded under Title VII.
- As described in the complaint, the plaintiff has also shown that termination occurred, at best, under <u>suspicious circumstances</u> in that he was indefinitely suspended and terminated without given any opportunity to respond.
- Under the circumstances described above (a member of a protected class who was terminated under suspicious circumstances), the employer failed his burden of articulating or stating a legitimate non-discriminatory reason for termination. To the extent that "violation of Wyeth's conduct policy" was brought up as the stated reason,

which is a pretext, this is an issue that poses factual questions which can be resolved by fact finders in view of the disputed evidence regarding the events and facts based on which the employer's termination decision was made. Consequently, the defendant's motion is deficient as a matter of law.

- Unemployment compensation investigations sided with and supported the plaintiff and ruled for plaintiff's eligibility, concluding that no misconduct at the work place was shown on the plaintiff's part.
- Additional examples of harassment, hostile work environment and differential treatment, including delayed promotions are detailed in the complaint and in this response.
- The facts presented here afford the fact finder an ample basis to infer discriminatory motive in terminating the plaintiff, accordingly the motion should be denied.

b. Retaliation

- Enforcement of Title VII depends on the employees who are willing to file complaints against discriminatory parties. The plaintiff repeatedly complained of discrimination and hostile work environment (2005, 2006, early 2007). Retaliation in various forms followed since the first complaint, 2005 as described in the complaint and the accompanying brief, finally culminating in the ultimate retaliatory "tangible employment action" termination.
- Supreme court Supreme court held that 2000e-3(a) covered employer actions that would have been materially adverse to a reasonable employee which meant - to be actionable, the employer's actions had to be harmful to the point that they "might well dissuade a reasonable worker" from making or supporting a charge of discrimination.[22] This standard was clearly met here. Fact finders can reasonably believe that the "tangible employment action" of indefinite suspension followed termination as a result of complaint of discrimination, would certainly dissuade a reasonable worker from making or supporting a charge of discrimination. 2000e-3(a) retaliation standard was phrased in general terms, because the significance of any given act of retaliation would often depend upon the particular circumstances, for an act that would be immaterial in some situations would be material in others.[23] The

---

[22]  Burlington Northern v. White, ---U.S.---, 126 S. Ct. 2405 (2006)
[23]  Burlington Northern v. White, 126 S. Ct. 2405

actionability of any set of facts depends on the circumstances "Context Matters".[24] Further support of the claims is evident from the close proximity of complaining (November, 2006-April, 2007) and the suspension/Termination (May-June, 2007).

- Anti retaliation provision seeks to prevent an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's basic guarantees, i.e., "unfettered access" to Title VII's remedial mechanisms by prohibiting employers' actions that are likely to deter discrimination victims from complaining to employers or other entities.[25]


- In direct retaliation to the plaintiff's discrimination complaint, and prior to termination, plaintiff has suffered delayed promotions, in comparison to his peers. The company refused to provide information about his promotion decisions and timing despite his request of such information.
- Plaintiff has since suffered a constant and hostile scrutiny. A few examples are cited herein and are detailed in the brief/complaint:
  Dramatic change of attitude from his department head, JoAnn Scatina, Vice President; from a leading role as a senior scientist to no roles in off-site meetings; Extended, unexplained and unjustified delays in the review process of plaintiff's work; Substantially-delayed responses on data request and feedback from others; to summarize, plaintiff was systematically excluded from meetings and was virtually being left out of the loop in departmental and group matters altogether, in an effort to undermine his stance as a senior productive scientist.

## E. Sufficient Facts Have Been Stated To Sustain a Claim for Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress has been applied, among other ways, to cases where the employer circulated false rumors to enforce the employee to resign.[26] The claim is asserted here based on the fact that the plaintiff's manager told him that "People around here think that you Fit a Certain Profile" and act unfavorably towards you because of that, suggesting that management let this false rumor circulate without stopping it, discouraging it or at least looked the other way, knowing how emotionally sensitive and distressing for one to have to endure an image of "an enemy number one

---

[24] Burlington Northern v. White, 126 S. Ct. 2415
[25] Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808.
[26] Armano v. Federal Reserve Bank of Boston, 468 F. Supp 674 (D. Mass. 1979).

with questionable patriotism or worse", which was the context of the conversation, among a close community of colleagues. This outrageous action far exceeds the ordinary work harassment. This also amounted to willfully placing the plaintiff in a false light in the public eye, even endangering his safety by inviting a potentially violent retaliatory act based on the false rumor that he is not one of us and portraying him, falsely, to be against us. Such act is outrageous by any standard aside from the plaintiff's fearful reaction to it. When all outrageous acts against the plaintiff failed to force him to resign, which was the company's aim, the company was eager for a pretext and used the plaintiff's complaint of identity theft and intimidation as a basis for termination. Another outrageous and humiliating practice that went on for virtually the entire year of 2006 typically involved a request by plaintiff's supervisor to his office then closes the door entirely, get engaged in a substantive or non-substantive discussion of work or non-work related matters seemingly to fill time until either a phone call or a knock on the door at which time he then was free to "Release Plaintiff". Plaintiff believes that personnel were going through his office during these times for extra scrutiny and saw by his own eyes in one incident where unidentified personnel were hurrying out of his office as he caught a glimpse of them from down the hall. A consistent humiliating pattern that made plaintiff feel that he was distrusted "Criminal - Enemy Number 1" at his work place and that they could literally imprison him at will and against his will – That is an outrageous act aside from the plaintiff's reaction of extreme humiliation and the company knew that such distress was certain. In considering the subject matter, duration and severity of these outrageous conducts, it is clear that fact finders can reasonably infer that the plaintiff was subjected to sufficiently outrageous acts and treatments beyond the realm of social tolerance of abusive conduct.

## F. Sufficient Facts Have Been Stated To Sustain a Claim for Conspiracy

The complaint stated that "At all material times additional defendants, Robert Ruffolo, Jr, Joan Scatina, Theresa Hultin and Appavu Chandrasekaran were employees and agents of defendant, Wyeth Pharmaceuticals, acting in a managerial capacity within the scope of their authority, except otherwise alleged herein, …

The exception underlined and noted above refers to the conspiracy claim. Co-defendants acted within the scope of their Wyeth authority in regard to other claims. The conspiracy claim can be clarified as follows: Plaintiff believes that defendant R. Ruffolo invited a non-Wyeth "third party" to be involved in the follow up of the plaintiff's discrimination complaints and failed as the president of the Wyeth to act in good faith in resolving the

complaint and remedy the hostility.  This is supported by the fact that in his response to the discrimination complaint, he stated:  "I can't make any promises"! – He also refused to identify the person he designated to follow up on the complaint or the person's relationship to Wyeth [See exhibit E].  In his capacity as a company president, a fact finder can expect that a reasonable reply would have been:  Wyeth will investigate your discrimination complaint and I promise that there will be no discrimination on the part of Wyeth in the work place abiding by their stated policy *"Wyeth will investigate complaints promptly and will take appropriate remedial or corrective action with respect to unlawful harassment or* discrimination" and applicable laws.  This did not happen in writing or in reality.

As it relates to defendants A. Chandrasekaran and T. Hultin, they acted suspiciously during the incident that led to plaintiff's termination, with the purpose of discriminating against him and ultimately terminating his employment.  They gave conflicting statements and reasons regarding an extended time off, unexpectedly by A. Chandrasekaran [from November 2006 to January 2007].  The incident and timing are significant as it lead directly to plaintiff's termination.  The departmental e-mail trail between plaintiff and the two superiors, together with depositions, all to be uncovered during discovery as plaintiff anticipates, will shed light and support that plaintiff's termination was well planned in advance and a pretext was conveniently used by the company as a reason.  It will also reveal whether co-defendants acted within their capacity, in which case plaintiff is prepared to reach a mutual resolution with the defendants regarding this claim or outside their capacity as plaintiff believes and thus asserting the claim.  Further, contrary to the defendants' assertion, plaintiff, as described in the complaint and elaborated on in this response, has adequately pleaded his Title VII, breach of contract and wrongful discharge claims, therefore the claim of conspiracy is maintained.  In any case, even asserting an incorrect legal theory will not necessarily be ground for dismissal[27], neither would an omission of an allegation of a legal element should be grounds for dismissal[28].  While it is true that the statement "plaintiff admits that co-defendants were acting within the scope of their authority" is seemingly inconsistent, nevertheless, as stated earlier, plaintiff qualified by adding "except otherwise stated herein" and any case, Rule 8 (d) protects a party's right to plead inconsistent claims, and

---

[27]  See Williams v. Seniff, 342 F. 3d 774 (7th Cir. 2003).
[28]  Barlow v. Marion City. Hospital Dist., 495 F. Supp. 682 (M.D. Fla. 1980); Cronin v. Bradley, 795. F.2d 310 (3rd Cir. 1986); Cipriano v. Bd of Education Cty. School Dist., 785 F.2D 51 (2D Cir. 1986); Bakken v. North American Coal Corp., 641 F. Supp. 1015 (D.N.D. 1986); Coffin v. South Carolina Dept of Soc. Serv., 562 F. Supp. 579 (D.S.C. 1983); Celotex Corp. v. Catrett, 477 U.S. 317, 106 s. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

statements made in claims cannot generally be offered as admissions against other claims within the same pleading that contain inconsistent or alternative averments[29].

## GENERAL CONSIDERATION

Plaintiff wishes to state that as a direct and legal result of the conduct of defendant, Wyeth Pharmaceuticals, plaintiff sustained economic losses, including past and future compensation, and loss of other economic benefits. Plaintiff has also suffered loss of financial stability, had to liquidate pensions and virtually all retirement funds, loss of peace of mind and currently facing the loss of his home that shelters his family (spouse and children), with all the humiliation, mental anguish and emotional distress that go with the loss of job and home.

Plaintiff urges the court consideration while proceeding as a *pro se* and trusts that having prepared the original complaint and this response on his own, that it will be viewed by the honorable court with liberty. "Understandably not composed to the standards expected of experienced practicing attorneys, pro se pleadings are viewed with considerable liberty and are held to less stringent standards than those expected of pleadings drafted by lawyers"[30]. Plaintiff continues his diligent attempt to retain an attorney to guide him through these proceedings and repeats his request to seek the court's help regarding this matter. His efforts are hampered in part by the lack of financial resources as described in the paragraph above, as a direct result of the company's actions. The inability to locate legal help or representation is compounded by the facts that the majority of the attorneys approached by the plaintiff give no response at all, without having the opportunity of hearing a single word about the case – hence the plaintiff's repeated request for the court's help.

Plaintiff also wishes to note that this response and/or the previously filed pleading may be amended as necessary in anticipation of retaining a future attorney, seeking legal counseling, or if further information have been ascertained.

---

[29] See Aholelei v. Dept. Of Public Safety, 488 F. 3d 1144, 1149 (9th Cir. 2007); Rodriguez-Suris v. Montesinos, 123 F.3d 10, 20 (1st Cir. 1997): Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority, 103 F.3d 1165, 1175 (3rd Cir. 1997); Henry V. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994); Padre Shipping Inc. v. Yong He Shipping, 553F. Supp. 2d 328, 333 (S.D. N.Y. 2008).

[30] See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (per curiam); Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96, 30 L. Ed. 2d 652 (1972).

Additional response may also be filed, if necessary, in light of plaintiff receiving a small portion of previously requested information from the company only on Feb 18, 2010 (only 3 days before this response is due) and plaintiff is currently inspecting these materials [Please See Addendum on Next Page].

Upon the honorable court consideration, and if the court deems necessary, the plaintiff is requesting an oral argument to be convened and/or to be given the opportunity by the honorable court to conduct limited discovery prior to the ruling in order to establish further evidence/facts (in analogy to establishing jurisdiction)[31].

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that defendants' motion to dismiss be denied and that they be ordered to answer the complaint.

WHEREFORE, plaintiff prays that defendants' motion to dismiss plaintiff's amended complaint be denied, that plaintiff have all of the relief sought in his complaint and the court grant such other and further relief as it deems just and proper.

This 22 day of February, 2010.

Respectfully Submitted,
Sayed Elmarakby, *pro se*,* 4 Sheffield Way, Newtown, PA 18940

* [Plaintiff continues to seek a Counsel for Representation and continues to seek the honorable court's help]

---

[31] Miller v. U.S., 530 f. Supp. 611 (E.D. Pa. 1982).

**ADDENDUM**

Plaintiff wishes to make the honorable court aware that plaintiff's request of the following was <u>refused</u> by the company at the present time:

- All documents and writings that were used for plaintiff's promotions and disciplinary actions, including termination.

- The documents on which the company based the decision to terminate plaintiff's employment as well as all investigative reports conducted by the company or others on its behalf into the grounds or reasons for discharging plaintiff. This includes communication between plaintiff's manager, director and his group director.

- All communication (e-mails, inter-company memoranda, etc) between Robert Ruffolo, Jr (to whom the complaint of discrimination was first directed) and all other persons in connection with the investigation of the complaint, including the person whom he designated to follow up on the complaint and her business relationship to Wyeth.

- Plaintiff believes that since the limited request involves primarily actions related to his termination that he is entitled to such information pursuant to the Pennsylvania law (statutory reference:  43 P.S. §1322), which states in part:

*An employer must, at reasonable times, upon the request of an employee, permit that employee or an agent designated by the employee to inspect his or her own personnel files used to determine his or her own qualifications for employment, <u>promotion</u>, additional compensation, <u>termination,</u> or <u>disciplinary action</u>.*

- It is also noted that plaintiff reiterated his notice to the company that "all records of all saved e-mail messages (incoming and outgoing), hard or e-copies, of plaintiff's office computer and saved voice mail messages on his office phone are to continue to be preserved as such as they contain future evidentiary support of plaintiff's claims asserted in the complaints.  Plaintiff advised that a demand for such evidentiary preservation was previously communicated to Wyeth on June 1, 2007 stating that 'plaintiff's office voice mail and computer be maintained in its present condition and that nothing be deleted or removed so that the information thereon may be accurately preserved (Communicated to Wyeth by a letter dated June 1, 2007)".

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SAYED ELMARAKBY,<br> Plaintiff | : | |
| | : | |
| v. | : | **No. 09-1784 (RBS)** |
| | : | |
| WYETH PHARMACEUTICALS,<br>ROBERT RUFFOLO, JR, JOANN<br>SCATINA, THERESA HULTIN, AND<br> APPAVU CHANDRASEKARAN,<br> Defendants | : | |

**[PROPOSED] ORDER**

Now on this _____ day of _____ , 2010, having considered Defendant's Motion to Dismiss, and Plaintiff's Response thereto, and for good cause shown, it is hereby ORDERED that the Motion is DENIED.  It is FURTHER ORDERED THAT Defendants file an answer on or before _____, 2010.

IT IS SO ORDERED

_____
R. Barclay Surrick, J.

## EXHIBIT A

## WYETH HUMAN RESOURCES POLICY

Please Note the Following, all of which was violated by the company:

The human resources policy (4/1/2004) states:

*Disciplinary Actions: 1. Verbal Warning – When an employee's conduct becomes unacceptable, the supervisor should inform the employee that his or her conduct is unsatisfactory. The supervisor should counsel the employee as to what specific action is required to meet acceptable job standards and the consequence of further violations;*

*2. Written Warning – if verbal warning does not result in improvement, the supervisor should give the employee a written notice (i.e., put him or her on notice that termination could result if immediate improvement or a change in behavior does not occur). The supervisor should discuss all disciplinary actions with the employee;*

*3. Discharge/Termination – The company may discharge an employee in cases – e,g., failure to meet or report violation of established SOPs, performance has not sufficiently improved or where progressive discipline has failed to achieve improvement*

The employees have the right to a review per the *Assurance of Fair Treatment Policy.*

The company is required to prepare a human resources memo prior to termination

The company is highlighting "*Progressive discipline ensures that an employee is made aware of his or her unacceptable attendance record, conduct or work performance and is given an opportunity to improve*".

**\*Please See Copies of Policy on next 4 pages**

WorkPlace Policies

# Access to Employee Personnel Records or Information

The Company's policy about viewing information in your personnel file.

# Assurance of Fair Treatment

Every employee is entitled to fair and equitable treatment in all Company business affairs, particularly in the application of established policies and procedures, and employees should have a means of appeal to higher management when treatment is perceived unfair or inequitable.

# Business Dress

This policy outlines appropriate and inappropriate dress in the workplace.

# Code of Conduct

The Company has developed a Code of Conduct to ensure that all employees comply with federal, state, provincial and local laws and demonstrate the highest standard of business ethics.

# Conduct in the Workplace

The Company and its employees share the responsibility of adhering to the highest ethical and legal standards, maintaining a work environment that is safe and dealing fairly and honestly with the people with whom we work.

# Disciplinary Actions

Progressive discipline ensures that an employee is made aware of his or her unacceptable attendance record, conduct or work performance and is given an opportunity to improve.

# Driver Safety Program

The Company requires the safe operation of Company vehicles at all times and has established a Driver Safety Program to help ensure driver safety.

# Employment-At-Will

| HUMAN RESOURCES POLICY | Policy 2004<br>Issue Date: April 13, 2004<br>Effective Date: April 1, 2004 |
|---|---|

## DISCIPLINARY ACTIONS

### I.   SCOPE

This policy applies to nonunion employees of Wyeth, its divisions and subsidiary companies, who work in the United States.

### II.   PURPOSE

The Company recognizes, in general, the importance of progressive discipline to ensure that an employee is made aware of his or her unacceptable attendance record, conduct or work performance and is given an opportunity to improve.

Progressive discipline also is important to ensure compliance with all laws, regulations, rules and standards that govern the pharmaceutical and healthcare industry. The Company expects and requires all employees to comply with the standards that govern the industry and with company policies intended to ensure compliance with such standards, including, but not limited to, any failure to meet or report violations of established standard operating procedures (SOPs), sales and marketing promotional guidelines and other company policies.

*Nothing, however, in this policy creates a contractual relationship between an employee and the Company. Employment with Wyeth is "at will" and may be terminated at any time with or without cause at the option of the employee or the Company.*

### III.   POLICY

When an employee's behavior or performance in the workplace is unacceptable, the Company may, in its sole discretion, subject the employee to disciplinary action. Disciplinary action for behavior in the workplace such as insubordination, attendance violations, willful non-performance or other types of misconduct is progressive in nature and generally consists of three stages: verbal counseling/warning, written warning and discharge. When an employee demonstrates performance problems or deficiencies due to a lack of skill or knowledge rather than a willful decision not to perform or other misconduct, verbal counseling should be the first step, followed by a Performance Improvement Plan (PIP). Guidelines for addressing performance problems or deficiencies are in Policy 2006 – Performance Management, Section III.D. An employee whose performance does not improve may be subject to discharge.

While these procedures describe successive levels of action, nothing herein shall impair the Company's right to immediately discharge an employee or to waive, lessen or increase a penalty, depending on the circumstances involved. The Company may, in its discretion, skip one or more steps of progressive discipline.

Accurate records of all formal disciplinary actions and performance improvement efforts should be maintained and kept in the employee's personnel file.

The implementation of disciplinary procedures should not be construed as preventing, limiting or delaying the Company from taking any appropriate disciplinary action, including discharge, in circumstances where the Company deems such action appropriate. The Company retains

Page 1 of 3

# Wyeth

| HUMAN RESOURCES POLICY | Policy 2004<br>Issue Date: April 13, 2004<br>Effective Date: April 1, 2004 |
| --- | --- |

the right to terminate an employee at any time, with or without cause or notice. Where a particular Company policy, such as Substance Abuse, specifies a particular Company response, the more specific terms of that policy will apply.

### A. General Guidelines

A supervisor or HR representative on the supervisor's behalf will investigate and/or review any possible infractions of the Company's <u>Code of Conduct</u> or <u>Conduct in the Workplace</u> policies, Company policies relating to meeting or failing to meet Standard Operating Procedures (SOPs), failure to report violations of established SOPs, workplace safety standards, sales and marketing promotional practices or any failure to meet acceptable performance standards, and will discuss findings with Human Resources.

If appropriate, the supervisor may initiate disciplinary action upon completion of the investigation. A disciplinary discussion with an employee should take place in a private setting. The affected employee should have an opportunity to offer an explanation of his or her actions and provide information to support his or her actions.

Human Resources must be consulted before taking disciplinary action more severe than a verbal warning. The step at which the progressive discipline program begins should depend upon the severity of the problem and should be decided by a supervisor in consultation with Human Resources.

The fair and uniform administration of disciplinary action is the responsibility of every member of management, regardless of his or her level in the organization. Supervisors are authorized to counsel and/or reprimand only those employees who are under their direct jurisdiction; however, any supervisor is authorized to take immediate and necessary action to prevent or halt an unsafe practice or violation of the <u>Code of Conduct</u> or <u>Conduct in the Workplace</u> policies.

### B. Disciplinary Actions For Behavior In The Workplace

1.  Verbal Counseling/Warning

    When an employee's attendance record, performance, behavior or conduct becomes unacceptable, the supervisor should inform the employee that his or her attendance record or conduct is unsatisfactory. The supervisor should counsel the employee as to what specific action is required to meet acceptable job standards and the consequences of a further violation. A verbal warning is generally the first stage of the progressive discipline process. In some cases, a verbal counseling which is informational rather than disciplinary may precede a verbal warning. The supervisor should make a written record of the discussion. This record should note the date the warning was given and summarize the violation(s) or performance problem(s) and the expected improvement.

2.  Written Warning

    If a verbal warning for unacceptable behavior does not result in improvement or the offense warrants more serious action beyond a verbal warning, the supervisor should give the employee a written warning (i.e., put him or her on notice that



**Wyeth**

<table>
<tr><td>

# HUMAN RESOURCES POLICY

</td><td>

Policy 2004
Issue Date:  April 13, 2004
Effective Date:  April 1, 2004

</td></tr>
</table>

termination could result if immediate improvement or a change in behavior does not occur).  Link here for a <u>Written Warning template</u>.  For non-willful performance issues, see Policy 2006 – Performance Management, Section III.D.  The supervisor's superior and Human Resources should review the written warning before it is discussed with the employee.

The supervisor should discuss all disciplinary actions with the employee.  The written warning should state and the employee should be advised that failure to improve or repeating the unacceptable behavior will result in termination.  The employee should acknowledge receipt of the warning by signing a copy that is subsequently placed in the employee's personnel file.  If the employee refuses to sign, the supervisor should note the refusal on the warning and may call in another supervisor (or employee if no supervisor is available) to witness this refusal.

The manager must consult with Human Resources before proceeding to discharge an employee.  Link here for a <u>Manager's Termination Decision Memo template</u>.

> **Note:**  An employee whose conduct is not fully satisfactory, i.e., the employee is on written warning or on notice of termination, is not eligible to apply for internal positions until his or her behavior/conduct issues are fully resolved to the satisfaction of management.

3.  Discharge/Termination



The Company may discharge an employee in cases where the offense is serious, e.g., failure to meet or report violations of established SOPs, performance has not sufficiently improved or where progressive discipline has failed to achieve improvement.  The supervisor may not discharge an employee without first discussing the matter with and obtaining approval from the Human Resources department.  Human Resources will advise the supervisor if other approvals are required.  In making the decision to terminate an employee in Wyeth Pharmaceuticals, a termination dossier or a memo outlining the steps taken to correct performance and the reasons for termination should be prepared by the supervisor and Human Resources to document the case for terminating the employee.  Link here for <u>Termination Dossier Guidelines for Wyeth Pharmaceuticals</u>.  Labor and Employment Counsel must approve the dossier.

C.  **Employee's Request for Review**

If an employee disagrees with any disciplinary or performance action taken, including discharge, the employee may request a review of it under the <u>Assurance of Fair Treatment Policy</u>.

# Wyeth

**EXHIBIT B**
**INSURANCE RECORDS**

**Please note the following:**

**Employee & Dependent Information**

|  |  | Relationship |
|---|---|---|
| Line 5 Entry: | BETTY J ELMARAKBY | DISABLED DEPENDENT |

* Betty J Elmarakby does not exist in plaintiff's family and never has existed in plaintiff's family

* No other last names that match ELMARAKBY in the entire Wyeth listings.

**\*Please See Copies of benefits sheets on the next 3 pages.**

**Employee & Dependent Information:**

| # | Name | Relationship | Date of Birth | Sex | Medical | Dental | Vision |
|---|------|--------------|---------------|-----|---------|--------|--------|
| | | | | | | | |
| 1 | Sayed A Elmarakby | Self | 4/24/1953 | M | X | X | |
| 2 | KATHRYN M ELMARAKBY | Spouse | 3/28/1959 | F | X | X | |
| 3 | MAGGIE A ELMARAKBY | Child | 4/29/1989 | F | X | X | |
| 4 | ADAM S ELMARAKBY | Child | 4/29/1992 | M | X | X | |
| 5 | BETTY J ELMARAKBY | Disabled Dependent | 5/21/2006 | F | X | X | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

It is your responsibility to notify us within 31 days when your dependents are no longer eligible for coverage (i.e., ineligibility due to divorce, no longer a full-time student, no longer disabled, etc.) by calling the Wyeth HR Service Center at 1-877-WYETH HR (1-877-993-8447) or going online to www.wyeth-hrsc.com and declaring a qualifying life event.

**Property and Casualty and Long-Term Care Plan Participants:**
If you have elected to participate in or make any changes to the Property & Casualty Insurance Plan or the Long-Term Care Plan, you will receive confirmation of your enrollment directly from the carrier. If you do not receive confirmation of your enrollment or have questions regarding your coverage, please contact the carrier directly. Call MetLife Auto & Home at 1-800-438-6388 or John Hancock Long Term Care at 1-877-244-1042 for assistance.

2007 Non-Union Confirmation Statement

# Wyeth

## Employee Benefits

### 2007 Confirmation Statement
### Enroll Date: 11/14/2006

---- IMPORTANT – PLEASE READ ----

Sayed A Elmarakby
4 Sheffield Way

Newtown, PA 18940

This is a confirmation of your 2007 benefit elections. Please review this document carefully for accuracy. If the elections shown are incorrect or if you have any questions concerning this statement, please call the **Wyeth HR Service Center at 1-877-WYETH HR (1-877-993-8447)** and an HR Service Representative will assist you.

| Elections | Coverage | | Monthly Costs For Your 2007 Elections | |
|---|---|---|---|---|
| | | | Before-Tax | After-Tax |
| Medical Plan | Wyeth Comprehensive Medical Plan Family | | $40.00 | |
| Prescription Drug Plan | Wyeth Prescription Drug Plan Family | | Company-provided | |
| Dental Plan | Wyeth Dental Plan Family | | $27.00 | |
| Vision Plan | No Coverage (declined) | | $0.00 | |
| Dependent Care | | | | |
| (1) Spending Account | $0 | Annual Contribution | $0.00 | |
| (2) Assistance Plan (Company Match) | $0 | Annual Contribution | Company-provided | |
| (1+2) = Total Dependent Care | $0 | Annual Contribution | | |
| Health Care Spending Account | $960 | Annual Contribution | $80.00 | |
| Basic Short-Term Disability | 50% of salary | | Company-provided | |
| Voluntary Short-Term Disability | Up to Additional 30% of Salary | | $3.57 | |
| Basic Life Insurance | $96,000 | | Company-provided | |
| Business Travel Accident Plan | $760,741 | | Company-provided | |
| Voluntary Long-Term Disability | $4,755 | Monthly Benefit | | $50.52 |
| Voluntary Group Universal Life | $191,000 | | | $40.30 |
| Voluntary Cash Accumulation Fund | $0 | Annual Contribution | | $0.00 |
| Voluntary Spouse Term Life | $25,000 | | | $13.50 |
| Voluntary Child Term Life | $10,000 | | | $0.90 |
| Voluntary AD&D | $200,000 Family | | | $2.80 |
| Life Management Program | Confidential Counseling & Dependent Care Resources & Referrals | | Company-provided | |
| **Before-Tax/After-Tax Subtotals** | | | $150.57 | $108.02 |
| **Total Benefits Cost Per Month** | | | | $258.59 |

000051895

**Please see reverse side for dependent information.**

# Wyeth

**RETURN TO WELCOME**

**LOGOUT**

## Your Benefits Online

**SAYED A ELMARAKBY**
**4 SHEFFIELD WAY**
**NEWTOWN PA 18940**

**PARTICIPANT ID** ━━━━━
**DATE OF BIRTH** 04/24/1953
**DIVISION: PHAR**
**BRANCH: WYCL**

---

**11.14.2006**

Personal Information

Dependent Information

Medical Plan Options

Dental Plan Options

Vision Plan Options

Health Care FSA

Dependent Care FSA

Voluntary GUL Insurance

Voluntary Spouse Term Life Insurance

Voluntary Child Term Life Insurance

Confirmation Statement

Get Documents and FAQs



### Dependent Information

**Help?**

Listed below is your current dependent information. To update a current dependent's information, add a dependent or remove a dependent who is no longer eligible, call the Wyeth HR Service Center at 1-877-WYETH HR (1-877-993-8447) and an HR Service Representative will assist you.

| | Name | Date Of Birth | Dependent SSN | Relationship |
|---|---|---|---|---|
| 01 | KATHRYN M ELMARAKBY | 03/28/1959 | ━━━━━ | SPOUSE |
| 02 | MAGGIE A ELMARAKBY | 04/29/1989 | ━━━━━ | CHILD |
| 03 | ADAM S ELMARAKBY | 04/29/1992 | ━━━━━ | CHILD |
| 04 | BETTY J ELMARAKBY | 05/21/2006 | | DISABLED DEPENDENT |

Do you participate in the company sponsored onsite daycare center?

○ Yes  ● No

*unlawful entry unauthorized acc to which I requested correcti and investigation. Thanks S-E-*

**EXHIBIT C**
**E-mail Communication between Plaintiff (Sayed Elmarakby) and his Manager**
**(Appavu Chandrasekaran, Chandra)**


**\*Please See a Copy of the e-mail on the next page**

**From:**     Sayed Elmarakby
**To:**        Chandrasekaran, Appavu
**Date:**      4/11/2007 11:39 AM
**Subject:**   A Follow up Per Your Request

Hi Chandra,

As a follow up on our discussion earlier today at your office per your request and as you requested, I am following up with an e-mail, as you requested, outlining the incident of tampering with my Human Resource family and dependent sheet personal information which I discovered at the annual review of benefits and open enrollment period at the end of the year (2006).  As I explained at your office in communicating the incident, someone entered additional entries to my dependent's sheet in an unlawful, threatening and intimidating way.  I reported the incident to the 800 number of Wyeth Human Resource Center as instructed in the HR form provided - I was told that a corrected benefits dependent sheet will be sent to me, which so far I have not received.  As per our discussion, I am kindly asking to pursue enquiry about the incident from HR to look into who and how the entries were made in my personnel file and whether or not the problem has been corrected and assurance that identity misrepresentation don't occur again regarding HR personal files.
Please let me know if you have any comments, questions or need additional information regarding this matter.  Thanks, Sincerely, Sayed E.

## EXHIBIT D
## Insurance Records even after Plaintiff's Termination

**Please note the following:**

- A letter from the insurance dated <u>July 2, 2007</u>, which still included the illegal entry of <u>Disabled Independent</u>, Betty J Elmarakby (who does not exist) even though the plaintiff was terminated on <u>June 1, 2007</u>.

- A sheet from MetLife insurance on their web-site, showing same as above and dated June 25, 2007.

**\*Please See Copies of benefits letters/sheets on the next 2 pages**

 **SHPS**

SHPS, Inc.
Cobra Administration
P.O. Box 34690
Louisville, KY 40232-9737

Sayed Elmarakby
4 Sheffield Way

Newtown, PA  18940

## CERTIFICATE OF GROUP HEALTH PLAN COVERAGE

* IMPORTANT - This certificate provides evidence of your prior health coverage.  You may need to furnish this certificate if you become eligible under a group health plan that excludes coverage for certain medical conditions that you have before you enroll.  This certificate may need to be provided if medical advice, diagnosis, care or treatment was recommended or received for the condition within the 6 month period prior to your enrollment in the new plan.  If you become covered under another group health plan, check with the plan administrator to see if you need to provide this certificate.  You may also need this certificate to buy, for yourself or your family, an insurance policy that does not exclude coverage for medical conditions that are present before you enroll.



1. Date of this certificate: 07/02/2007

2. Name of  group health plan(s):

   Wyeth Comprehensive Medical Plan          Family          01/01/2007 - 06/30/2007

3. Name of Participant:  Sayed Elmarakby

4. Identification number of participant:  396869491

5. Name of any dependents to which this certificate applies:

   BETTY J ELMARAKBY          05/21/2006
   ADAM S ELMARAKBY           04/29/1992
   KATHRYN M ELMARAKBY 03/28/1959
   MAGGIE A ELMARAKBY     04/29/1989

6. Name, address and telephone number of the Plan Administrator or issuer responsible for providing this certificate:

   SHPS, Inc.
   Cobra Administration
   P.O. Box 34690
   Louisville, KY 40232-9737          1-866-247-3676

7. If the individual(s) identified in line 3 and 5 has at least 18 months of creditable coverage (disregarding periods of coverage before a 63 day break) check here _____X_____ and skip lines 9 and 10.

8. Date waiting period of affiliation period (if any) began:

9. Date coverage began:  See # 2 above

10. Date coverage ended:  See # 2 above

Note: Separate certificates will be furnished if information is not identical for the participant and each beneficiary.

MANAGE CURRENT BENE

- **Manage Current Benefits**
- My Plan Coverage
- Check a Claim
- Download Claim Form
- Find a PDP Dentist
- Preferred Dentist Program (PDP)
- Education
- Help

## Benefits at a Glance

### Dental Insurance

 Printer Friendly

| Name and Effective Date ? | Recent Claims | Plan Coverage |
|---|---|---|
| SAYED ELMARAKBY 01/01/2007 | PROCESSED CLAIM - 07/21/2005 PROCESSED CLAIM - 04/15/2005 View More Claims | SAYED'S BENEFITS |
| KATHRYN ELMARAKBY 01/01/2007 | PROCESSED CLAIM - 03/09/2007 PROCESSED CLAIM - 02/13/2007 View More Claims | KATHRYN'S BENEFITS |
| MAGGIE ELMARAKBY 01/01/2007 | PROCESSED CLAIM - 02/16/2007 PROCESSED CLAIM - 02/08/2007 View More Claims | MAGGIE'S BENEFITS |
| ADAM ELMARAKBY 01/01/2007 | PROCESSED CLAIM - 02/16/2007 PROCESSED CLAIM - 01/30/2006 View More Claims | ADAM'S BENEFITS |
| BETTY ELMARAKBY 01/01/2007 | None | BETTY'S BENEFITS |

**MetLife processes the majority of claims within 10 business days of their receipt.**

### Employee Plan Benefit Summary

**These Benefits are as of: 06/25/2007**

| | |
|---|---|
| Coverage Elected for | Employee, spouse and children |
| Effective Coverage Period ? | Jan 01, 2007 to Dec 31, 2007 |
| Coordination of Benefits ? | Birthday Rule ? Non-duplication of benefits applies. |
| Benefits Available for Teeth Lost Prior to Effective Date | No |
| Plan Has Preferred Dentist Program (PDP) Features | Yes |
| Maximum Dependent Age | Up to age 19 |
| Maximum Student Age | Up to age 25 |
| Maximum Age for Orthodontics | Dependent Child: Up to age 19 Dependent Child (full-time student): Up to age 25 All Others: No age limit |

### Plan Coverage Notes

- Eligibility is not a guarantee of coverage as actual benefit payments are determined only when a claim is processed.

- If MetLife determines that a less costly service, than the covered service performed by a dentist, could have been performed to treat a dental condition, MetLife may pay benefits based upon the less costly service if such service

**Find a Participating PDP Dentis**
Enter ZIP Code to find the closest Participating PDP Dentists.



Online dental claim inform
**It's easy**
**It's convenient**
**It's better**
**Switch**
to paperless dent
statements today



Click here to manage you Dental email alert subscription.

1) Would produce a professionally acceptable result under generally accepted dental standards, and 2) Would qualify as a covered service.

- If MetLife pays a benefit based upon a less costly service, the dentist may charge a patient or a patient's dependent for the difference between the service that was performed and the less costly service. This may be the case, even if the service is performed by an in-network dentist.

- A pretreatment estimate is recommended before the start of extensive dental treatment such as crowns, veneers, bridgework, implants, orthodontics, or periodontal services.  Learn more about how to request a pretreatment estimate.

 **Protect** your teeth with an ounce of prevention.

---

Manage Current Benefits | Find a PDP Dentist | Preferred Dentist Program (PDP) | Education | Help |

**Terms of Use | Privacy / HIPAA Notices**

© 2006 Metropolitan Life Insurance Company, New
All Rights Reserved. L0610791H(exp0908

**EXHIBIT E**
**E-mail Communication between Plaintiff (Sayed Elmarakby)**
**and Wyeth President (R&D) (R. Ruffolo, Bob)**
**(Dated March 7, 2005)**

**Please note the following:**

Wyeth President says "I cannot make any promises [regarding resolution of plaintiff's discrimination complaint]

Wyeth President does not, deliberately, identify the person he designated to follow up with me; and did not answer my inquiry about the identity of that person. In fact he did not follow up at all beyond the initial reply!

**\*Please See a Copy of the e-mail on the next age**

**Sayed Elmarakby - Fwd: Re: An Employee Private Message**

| | |
|---|---|
| **From:** | Sayed Elmarakby |
| **To:** | Ruffolo, Robert R. |
| **Date:** | 3/8/2005 11:42:58 AM |
| **Subject:** | Fwd: Re: An Employee Private Message |

Dear Dr. Ruffolo,

I wanted to thank you very much for your follow up on the matter that I brought to your attention regarding the work environment - I would like to respectfully ask for the name and title of the person you designated to look into the matter to follow up on a voice mail message that I received regarding this matter. When I attempted to use the last name given in an e-mail correspondence to follow up, no record of the exact last name spelling was shown to exist. I am also counting on your understanding of having your initial personal oversight on this matter given the nature of my grievance, hence this follow up e-mail to you. Once the matter will be brought up for inquiry, I assure you that I'll not burden you further with any communication regarding this matter.

Thanks Very Much.
Best Regards,
Sayed E.


>>> Sayed Elmarakby 3/7/2005 1:12:40 PM >>>

Dear Dr. Ruffolo,

Thanks very much for your reply - I look forward to, and trust that the person you designated to look into the matter would have all issues resolved. Thanks again.

Best Regards,
Sayed E.


>>> Robert R. Ruffolo 3/7/2005 12:53:43 PM >>>
Dear Sayed,

I am having someone look into this. However, since I do not know any of the issues, I cannot make any promises.
Regards,

Bob


>>> Sayed Elmarakby 3/7/2005 10:46:44 AM >>>

Dear Dr. Ruffolo,

I am writing to you to make you aware of an extreme hardship and hostile work environment that I have been subjected to and continue to be subjected to for sometime. Frequent discriminatory acts that violates my rights as a citizen of the united states as well as an employee are being committed against me on virtually daily basis. I am writing to you to please intervene on my behalf as an R&D employee and to please ensure that the extreme hostile work environment that I face every day be remedied.

I thank you very much in advance for your time and consideration of this matter.

With Best Regards,

Sayed A. Elmarakby, Ph.D.
Senior Research Scientist II
R&D - Preclinical Development - DSM - Biotransformation

## CERTIFICATE OF SERVICE

I, Sayed Elmarakby, *pro se*, hereby certify that on this 22nd day of February, 2010, true and correct copies of Plaintiff's response and a proposed order in the matter of Elmarakby v. Wyeth Pharmaceuticals, *et al*, were served upon the following by filing with the Clerk of the United States District Court for the Eastern District of Pennsylvania and by delivery to the Law Office of Morgan, Lewis &Bockius LLP, 1701 Market Street, Philadelphia, PA 19103.

Erica E. Flores, Associate
Morgan, Lewis &Bockius LLP,
1701 Market Street, Philadelphia, PA 19103

Sayed Elmarakby, *pro se*