IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAYED ELMARAKABY                          :
                                          :        CIVIL ACTION
                      v.                  :
                                          :        NO. 09-1784
WYETH PHARMACEUTICALS, INC.,              :
ET AL.                                    :

**MEMORANDUM**

**SURRICK, J.**                                    **MARCH  30 , 2015**

Presently before the Court is Defendants Wyeth Pharmaceuticals, Inc., Robert Ruffolo,

Jr., Appavu Chandrasekaran, and Joann Scatina's Motion to Dismiss Plaintiff's Second

Amended Complaint.  (Defs.' Second Mot., ECF No. 25.)[1]  For the following reasons,

Defendants' Motion will be granted.

**I.    BACKGROUND**

**A.    Procedural History**

Plaintiff filed an Initial Complaint on April 27, 2009.  (Compl., ECF No. 1.)  On August

10, 2009, Plaintiff filed an Amended Complaint.  (Am. Compl., ECF No. 2.)  Both Complaints

were filed *pro se*.  Defendants filed a Motion to Dismiss the Amended Complaint on September

8, 2009.  (Defs.' Mot., ECF 5.)  Plaintiff filed a response opposing Defendants' Motion to

Dismiss on February 22, 2010.  (Pl.'s Ans., ECF 10.)  Defendants filed a reply on March 2, 2010.

(Def.'s Reply, ECF 11.)

---

[1]  In his Second Amended Complaint, Plaintiff added Vikram Patel as a Defendant and
terminated Theresa Hultin as a party.  Patel is unrepresented and has not joined his co-
Defendants' Motion to Dismiss.

Counsel was appointed to represent Plaintiff.  On September 23, 2011, subsequent to the appointment of counsel, an Order was entered granting Plaintiff's Motion for Leave to File a Second Amended Complaint.  Defendants' Motion to Dismiss Plaintiff's Amended Complaint was dismissed as moot.  (ECF No. 21.)

With the benefit of counsel, Plaintiff filed a Second Amended Complaint.  (Second Am. Compl., ECF No. 22.)  In the Second Amended Complaint, Plaintiff asserts that Defendant Wyeth:  fostered and perpetuated a hostile and offensive work environment based on national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") (Count I)[2]; retaliated based on national origin under Title VII (Count II); violated parallel provisions of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951 *et seq.*, ("PHRA") dealing with discrimination and retaliation based on national origin (Count III); and that Ruffolo, Chadnrasekaran, Scatina, and Patel ("Individual Defendants") aided and abetted violations of the PHRA.

Defendants' Motion to Dismiss, filed on October 10, 2011, seeks to dismiss the entirety of Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  On November 7, 2011, Plaintiff filed an Answer to Defendants' Motion to Dismiss.  (Pl.'s Second Answer.)  On November 30, 2011, Defendants filed a reply.  (Defs.' Second Reply, ECF No. 32.)

---

[2]  In his Answer to Defendants' Second Motion to Dismiss, Plaintiff clarifies that "[he] has asserted a claim for discriminatory termination based on his ethnicity/national origin, not a hostile work environment."  (Pl.'s Second Ans. ¶ 13, ECF No. 31.)  Accordingly, we will treat this claim as one of wrongful discharge and unlawful discrimination rather than that of a hostile work environment.

B.      **Factual History**[3]

Plaintiff is an American citizen, born in Egypt.  He resides in Pennsylvania.  (Second Am. Compl. ¶ 5.)  After obtaining his Bachelor of Science degree, with Honors, in Alexandria, Egypt, Plaintiff obtained a Ph.D. from the University of Mississippi's School of Pharmacy.  (*Id.* at ¶ 6.) On or about March 4, 2002, Plaintiff began employment as a Senior Research Scientist with Wyeth Pharmaceuticals.  (*Id.* at ¶ 15.)  In his position, Plaintiff performed drug development research related to the U.S. Food and Drug Administration approval process for Wyeth's products across a wide variety of therapeutic areas, including neuroscience, cardiovascular diseases, inflammation, women's health, and oncology.  (*Id.* at ¶ 16.)

1.      *March 2005 Complaints*

In March of 2005, Plaintiff registered his first complaint with Dr. Robert Ruffolo, President of Wyeth, regarding a number of harassing activities, which he perceived to be based on national origin.  (*Id.* at ¶ 18.)  These complaints included:  Wyeth security subjecting Plaintiff to excessive scrutiny and observation; Vikram Patel, Plaintiff's supervisor, "shadowing" Plaintiff; Patel making harassing comments based on Plaintiff's national origin in company elevators; an intimidating confrontation with a security officer; a delayed promotion from Senior Research Scientist to Principal Research Scientist; delays in upgrading Plaintiff's computer equipment and telephone system; unwarranted reprimands; and denial of computer access to necessary documentation.  (*Id.*)  Plaintiff reported these complaints to Ruffolo.  He believes,

_____

[3]  In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).  As such, we rely on the operative facts as presented in Plaintiff's Second Amended Complaint.

however, that Ruffolo did not engage in any meaningful remediation.  (*Id.* at ¶ 19.)

        2.    *Ensuing Harassment*

After March of 2005, Plaintiff encountered escalating harassment.  (*Id.* at ¶ 21.)  JoAnn Scatina, Vice President at Wyeth and Plaintiff's Department Head, refused to interact with Plaintiff and ejected him from a meeting regarding the March 2005 complaints.  (*Id.*)  Plaintiff was removed from work-related meetings, committees, sub-groups, and working groups by Theresa Hultin, Plaintiff's Group Director; he was required to undergo more frequent evaluations of his work than other Wyeth employees; he was only permitted to meet with his Manager, Appavu Chandrasekaran, by appointment; and he encountered repeated requests for his authorization to work in the United States.  (*Id.*)  Interestingly, despite the alleged harassment and institutional discrimination that was supposedly based on his national origin, Plaintiff received periodic merit increases in compensation, his annual reviews indicated that he solidly met or exceeded expectations for his position, and Wyeth promoted him from Senior Research Scientist to Principal Research Scientist in January of 2007.  (*Id.* at ¶ 15 and Compl. at ¶ 4.)

        3.    *2007 Complaints*

On April 11, 2007,[4] Plaintiff once again complained about workplace harassment based

---

    [4] Defendants argue that the operative date for Plaintiff's second round of complaints should be in February of 2007, which would place those complaints outside the limitations period for Title VII discrimination claims, as discussed *infra* at Section III.A.1.  Defendants base this timing on Plaintiff's EEOC Charge ("[Plaintiff] again took [his] concerns and made a complaint to management about the hostile work environment about the treatment that [he] had been subjected in February, 2007.")  (Def.'s Second Mot., Ex. A. ¶ 4); and First Amended Complaint, which was filed *pro se* (Plaintiff averred that "[e]arly in 2007, plaintiff again relayed his concern and complained to his manager, Mr. A. Chandrasekaran about the hostile work environment . . . .").  (Am. Compl. ¶ 9.)  In his Second Amended Complaint, Plaintiff claimed that he elevated his complaints internally at Wyeth in April of 2007.  (Second Am. Compl. ¶ 22.)  In his Second Answer to Defendant's Motion to Dismiss, Plaintiff equivocates about the timing

on his national origin, this time to Chandrasekeran.  (Second Am. Compl. ¶ 22.)  These complaints were of a similar nature to those in March of 2005.  (*Id.*)  In response to Plaintiff's complaints, Chandrasekaran replied: "People in this department believe that you fit a certain profile and they act on it adversely."  (*Id.* at ¶ 23.)  When challenged on this point, Chandrasekaran replied: "You cannot fight city hall; you will lose."  (*Id.* at ¶ 25.)

       4.     *Events Leading Up to Termination of Plaintiff's Employment*

In November 2006, Plaintiff discovered an error in his confidential Human Resources records, which listed a "disabled dependent."  Plaintiff does not have any disabled dependents. (*Id.* at ¶ 29, 30.)  After repeated efforts to investigate and correct the mistake, Plaintiff requested a meeting with senior officials in the Human Resources Department.  (*Id.* at ¶¶ 31-33.)  On May 2, 2007, Plaintiff was approached by a Human Resources Representative, Kevin Gravatt.  (*Id.* at ¶ 35.)  Plaintiff insisted on speaking with a more senior Human Resources employee.  (*Id.*)

On May 16, 2007, Chandrasekeran requested a meeting with Plaintiff.  (*Id.* at ¶ 36.) Plaintiff went to Chandrasekeran's office but saw there was already an ongoing meeting.  (*Id.* at ¶ 37.)  Plaintiff returned to his office.  (*Id.*)  Upon doing so, Chandrasekeran and Gravatt came to Plaintiff's office accompanied by at least one Wyeth security official.  (*Id.* at ¶ 38.)  They advised

---

of his complaints ("Plaintiff made a second complaint about national origin based discrimination and harassment to Chandrasekaran in February and April 2007"; "after his last complaint of discriminatory treatment (February 2007)"; "on April 11, 2007, Plaintiff also made a complaint of discrimination"; "Furthermore, when Plaintiff complained to Chandrasekeran in February 2007 about the actions being taken against him . . . .").  (*See* Pl.'s Second Answer ¶¶ 4, 5, 13, 15.)

     Plaintiff's chronology of events in 2007 is unclear, but this dispute is of no moment.  As Plaintiff concedes, and as we address *infra* at Section III.A.1, the only discrete event serving as the basis for Plaintiff's Title VII claims is the termination of his employment by Wyeth.  (*See* Pl.'s Second Answer ¶ 13.)  For the purposes of this decision, we rely on the date April 11, 2007, provided in Plaintiff's Second Amended Complaint.

Plaintiff that the purpose of their meeting was the Human Resources records issue.  Plaintiff

responded with frustration.  (*Id.* at ¶¶ 39-40.)  By Plaintiff's account, aside from the "intimidating

and threatening show of force" by Wyeth employees, the meeting in Plaintiff's office was wholly

uneventful.  (*Id.* at ¶¶ 38, 41.)   Two days later, on May 18, 2007, Chandrasekeran placed

Plaintiff on indefinite disciplinary suspension without explanation.  (*Id.* at ¶ 42.)  On May 30,

2007, Chandrasekeran terminated Plaintiff's employment.  Plaintiff alleges that the stated reason

for the termination was Plaintiff's refusal to meet with Chandrasekeran regarding Plaintiff's

performance and behavior.  (*Id.* at ¶ 43.)[5]

5.     <i>November 17, 2007 Letter and Charge</i>

On November 17, 2007, Plaintiff sent a letter with an enclosed Pennsylvania Human

Relations Commission ("PHRC") Charge for joint filing with the U.S. Equal Employment

Opportunity Commission ("EEOC").  Plaintiff alleged job discrimination and wrongful

termination, asserting that Wyeth's termination of his employment was on the basis of national

origin and religion.  (*See* Pl.'s Second Answer Ex. A.)  The letter was signed by the Plaintiff but

the Charge was not verified.  (*Id.*)  The letter specifically requests "timely consideration of the

filing since the adverse action (job termination) by the employer occurred on June 1, 2007."  (*Id.*)

Plaintiff never amended his filing with the PHRC, and the PHRC did not issue a ruling based on

Plaintiff's filing.

---

[5]  In their Motion To Dismiss the Second Amended Complaint, Defendants state that
"Plaintiff was terminated for insubordination and disrespectful behavior after he flatly refused to
meet with his supervisor, screamed at and slammed a door on a co-worker, and stormed out of
the building.  (Def.'s Second Mot. ECF No. 25-1 at 2).

6.     *January 7, 2008 Filing*

On January 7, 2008, Plaintiff filed a Charge against Wyeth with the EEOC for joint filing with the PHRC alleging national origin discrimination and retaliation.  (*See* Def.'s Second Mot. Ex. A.)  In his filing with the EEOC, Plaintiff did not name the Individual Defendants as parties. (*Id.*)  Plaintiff did, however, identify Ruffolo, Chandrasekaran, Scatina, and Patel by name in the filing.  On February 28, 2008, the PHRC notified Defendant Wyeth that it had waived the opportunity to investigate Plaintiff's charge pursuant to its Worksharing Agreement with the EEOC.  (*See* Def.'s Mot. ¶ 2 & n.3.)  On January 30, 2009, the EEOC issued a Notice of Right to Sue.  This action followed.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Failure to state a claim upon which relief can be granted is basis for dismissal of the complaint. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  While a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief,'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), "a court need

7

not accept as true 'legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .'" *Wilson v. City of Phila.*, 415 F. App'x 434, 436 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York, Pa.*, 564 F.3d 636, 646 (3d Cir. 2009). However, a plaintiff's claims "'must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Although plaintiffs in a Title VII employment discrimination suit must eventually satisfy the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), Plaintiff is correct that, at this juncture, he need not establish a *prima facie* case of discrimination. *See Fowler*, 578 F.3d at 213 ("Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"); *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *7 (D.N.J. June 9, 2010) ("To prevent dismissal, a plaintiff must set out sufficient factual matter to show that the claim is facially plausible."). In determining whether dismissal is appropriate at this stage, courts complete a two-part analysis. *Fowler*, 578 F.3d at 210. First, the court separates the factual and legal elements of the claim and accepts all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211.

III.    **DISCUSSION**

    A.    **Title VII Termination and Retaliation Claims (Counts I and II)**

Plaintiff claims that Defendant "foster[ed] and perpetuat[ed] a hostile and offensive work environment, retaliating against [Plaintiff] because of hi[s] expressed opposition to offensive national origin related conduct in the work place . . . . [and] "retaliated against Plaintiff for exercising his rights under Title VII." (Second Am. Compl. ¶¶ 57, 60.) Defendants argue that Plaintiff's Title VII claims (Counts I and II) are time-barred, or, in the alternative, should be dismissed because Plaintiff has failed to allege a plausible claim of discrimination.

        *1.    Timeliness*

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discharge any individual . . . because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Prior to bringing an action in federal court, a plaintiff must first exhaust his or her claim in available administrative avenues. *See Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010). One such avenue is filing a Charge with the EEOC within 300 days of the alleged unlawful employment action. *See* 42 U.S.C. § 2000e-5(e)(1); *Baur v. Crum*, 882 F. Supp. 2d 785, 798 (E.D. Pa. 2012) ("Before filing a Title VII complaint in federal court, a plaintiff must first file a complaint with the EEOC and must receive a Right to Sue letter from the EEOC."). As a general rule, events that occurred more than 300 days prior to the filing of an EEOC Charge are time-barred. *See Mikula v. Allegheny Cnty. of Pa.*, 583 F.3d 181, 183 (3d Cir. 2009). Here, Plaintiff filed his charge with the EEOC on January 18, 2008. Accordingly, events occurring before March 13, 2007 would be time-barred.

Each chronology of workplace discrimination is unique and the contours of the EEOC

filing requirements and resulting time limitations often match up imperfectly with the alleged conduct. As such, "a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant . . . ." *Hightower v. Easton Area Sch. Dist.*, 818 F. Supp. 2d 860, 880 (E.D. Pa. 2011) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). To avail himself of this "continuing violations" theory, a plaintiff must establish two elements: (1) that at least one discriminatory act occurred within the 300 day filing period; and (2) that the harassment eclipses isolated events of intentional discrimination and constitutes an ongoing pattern of discrimination. *See Mock v. Northampton Cnty. Sheriff's Dept.*, No. 07-3607, 2008 WL 2996714, at *5 (E.D. Pa. Aug. 5, 2008) (finding pervasive pattern of sexual discrimination to constitute a continuing violation); *Parikh v. United Parcel Serv., Inc.*, No. 09-1652, 2011 WL 5193104, at *3-4 (D.N.J. Oct. 31, 2011) (finding the continuing violation doctrine inapplicable to two discrete and questionably discriminatory acts that occurred over a two-year period).

Defendant Wyeth terminated Plaintiff's employment on May 30, 2007. This is within the 300-day time frame. Defendants go to great lengths to establish the inapplicability of the continuing violations theory. Defendants argue that Plaintiff is attempting to bootstrap prior discrete time-barred events into his claims. We disagree. The prior discrete discriminatory acts alleged by Plaintiff color the events surrounding Defendant Wyeth's firing of Plaintiff and "may . . . be used as background evidence to support timely claims." *McCann v. Astrue*, 293 F. App'x 848, 850 & n.3 (3d Cir. 2008); *see also Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 433 (3d Cir. 1997) ("While the district court was correct in finding that any discrimination claim

based on [plaintiff's] 1992-93 tenure denial is time-barred, we reject the notion that events

surrounding that denial are not relevant evidence which [plaintiff] could use at trial."); *Nott v.*

*Reading Hosp. And Medical Ctr.*, No. 11-2265, 2012 WL 848245, at *10 n.7 (E.D. Pa. Mar. 14,

2012) ("Accordingly, the Court will limit its review of this claim to [p]laintiff's termination;

however we may look to the untimely acts as background evidence to support her alleged

discriminatory termination."); *Davis v. Gen. Accident Ins. Co. of Am.*, No. 98-4376, 2000 WL

1780235, at *3 (E.D. Pa. Dec. 4, 2000) (denying defendant's motions in limine to exclude

evidence of time-barred claims and evidence).  Accordingly, Plaintiff's Title VII claims are

timely insofar as the actionable unlawful employment action is the termination of Plaintiff's

employment.

## 2.    *Merits of Discriminatory Termination Claim (Count I)*

As mentioned above, to establish a claim of discriminatory termination of his

employment, Plaintiff must satisfy the burden-shifting framework set forth by *McDonnell*

*Douglas.  See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Mikell v. Marriott*

*Intern, Inc.*, 789 F. Supp. 2d 607, 616 (E.D. Pa. 2011) ("The *McDonnell Douglas* burden-shifting

framework also applies to claims of discriminatory termination").  In doing so, first, Plaintiff has

the burden to establish a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at

801-802.  Plaintiff establishes a *prima facie* case of discrimination through a showing of the

following:  (1) that he is a member of a protected class; (2) that he is qualified for his

employment; (3) that his employment was terminated; (4) under circumstances that give rise to

an inference of unlawful discrimination.  *Jones v. Sch. Dis. Of Philadelphia*, 198 F.3d 403, 410-

11 (3d Cir. 1999); *Pivorotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 (3d Cir. 1999) ("[A]

11

plaintiff claiming discriminatory firing need not prove, to make out a *prima facie* case, that she was replaced by someone outside the relevant class.").

Once the plaintiff has successfully met his burden, the burden shifts to the defendant to establish a legitimate, non-discriminatory reason for the adverse employment action. *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 278 (3d Cir. 1994)). If the defendant offers legitimate non-discriminatory reasons, the burden shifts back to the plaintiff to establish that the defendant's proffered reasons for the adverse employment action are pretextual. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

"Notwithstanding this burden shifting framework, at all times, the ultimate burden of persuading the trier of fact that Defendant intentionally discriminated against plaintiff remains with plaintiff." *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 512 (E.D. Pa. 2010) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 n.10 (3d Cir. 2003)). Defendants claim that Plaintiff has not met his burden under *McDonnell Douglas*. We agree.

As defined by the EEOC, national origin discrimination is "the denial of an equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1. Defendants concede that Plaintiff is a member of a protected class, that Plaintiff was qualified for his position, and that Defendant Wyeth's termination of Plaintiff's employment constitutes an "adverse employment action" under Title VII. Defendants contend, however, that Plaintiff's factual pleadings regarding the discriminatory nature of his firing are insufficient.

12

Plaintiff identifies a number of vague comments and non-specific experiences indicating that employees at Wyeth targeted him for harassment.[6]  Plaintiff contends that after years of extra scrutiny by security, issues with internal administration, and repeated requests for work authorization paperwork, he registered a second round of complaints to his supervisor in 2007. (Second Am. Compl. ¶¶ 18, 21, 22.)  Upon doing so, Plaintiff was told:  "People in this department believe that you fit a certain profile and they act on it adversely."  (*Id.* at ¶ 23.) Plaintiff connects his termination in May of 2007 with the harassment he endured at Wyeth, and particularly with the comment by his supervisor.  Plaintiff asserts that the harassment and the comment are directly related to his Egyptian heritage.  This is pure speculation.  The Second Amended Complaint contains no facts that directly or indirectly link the alleged harassment to Plaintiff's national origin.  Plaintiff's speculative assertions are not sufficient to show that Plaintiff has a "plausible claim for relief."  *See Thomas v. Pocono Mountain Sch. Dist.*, No. 10-1946, 2011 WL 2471532, at *6 (M.D. Pa. June 21, 2011) (finding plaintiff's claim of destructive discharge "mere speculation in the absence of facts from which a reasonable inference of discrimination can be drawn"); *Waiters v. Hudson Cnty. Corr. Ctr.*, No. 07-421, 2010 WL 1838468, at *4 (D.N.J. May 5, 2010) (noting that "Plaintiff bases her race and ancestry allegations on mere speculation about the motives behind her discipline and discharge," and that "[s]peculation is simply not evidence of discrimination").

---

[6] Nearly all of Plaintiff's registered complaints are unmoored in time, fail to identify individuals involved, and do not deal with anything related to national origin discrimination. (*See*, *e.g.*, "being shadowed," "being 'escorted,'" "being confronted," "delayed promotions," non-upgraded computer and telephone equipment, "being removed from meetings," "more frequent evaluation(s)," and "discrimination and retaliation [ ] by his supervisors").  (Second Am. Compl. ¶¶ 18, 21, 27.)

Plaintiff has failed to connect the vague comment from a supervisor to his termination. He has not established that his claim of discriminatory firing is "facially plausible." *Fowler*, 578 F.3d at 210.  In fact, Plaintiff's Second Amended Complaint alleges that the meeting that precipitated the termination of his employment was related to the ongoing dispute about the discrepancy in Human Resources records.  (Second Am. Compl. ¶ 39.)[7]

General allegations of discrimination based on national origin lacking specificity and lacking any reasonable nexus are insufficient.  *See Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (upholding district court's dismissal of discriminatory termination suit based on plaintiff's failure to connect scant factual allegations to discrimination based on national origin); *Karipidis*, 2010 WL 2521209, at *9-10 (granting defendant's motion to dismiss in employment discrimination suit, *inter alia*, based on failure of plaintiff to state a claim that he had suffered an adverse employment decision as a result of discrimination); *Jones v. Express Jet Airlines*, No. 11-926, 2011 WL 5024435, at *3 (D.N.J. Oct. 17, 2011) (granting defendant's motion to dismiss employment discrimination suit, *inter alia*, based on plaintiff's failure to provide sufficient facts linking termination to racial discrimination); *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1118-19 (D.N.M. 2011) (granting defendant's motion to dismiss employment discrimination suit, *inter alia*, based on plaintiff's failure to provide background information that would highlight the alleged workplace discrimination); *Bradley v. Aria Health*, No. 10-5633, 2011 WL 2411026, at *3 (E.D. Pa. June 15, 2011) (granting defendant's motion to dismiss in employment discrimination suit where plaintiff failed to support allegation of

---

[7]  In his Answer to Defendant's Second Motion to Dismiss, Plaintiff frames the Human Resources issue as "unrelated."  (Pl.'s Second Answer ¶ 4.)

pretextual discrimination behind termination of employment).

### 3.      *Merits of Retaliation Claim (Count 2)*

Defendant also challenges the sufficiency of Plaintiff's pleadings on his retaliation claim. Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Plaintiff advances a "pretext" retaliation claim.  *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).  To properly establish a *prima facie* case of retaliation, plaintiff must show the following:  (1) he engaged in a protected activity; (2) the employer took an adverse action against him; and (3) there is a causal connection between his participation in the protected activity and the adverse employment action.  *See Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsalla Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).  As with a claim based on discriminatory termination, at the dispositive motion stage, retaliation claims are subject to the *McDonnell-Douglas* burden-shifting framework.  *See Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004).  At this stage, Plaintiff need only satisfy the *Fowler* standard that he has alleged sufficient facts to demonstrate a "plausible claim for relief."

"[P]rotected activity" includes opposition to unlawful discrimination under Title VII. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Moore*, 461 F.3d at 340).  Plaintiff's belief that the activity is unlawful must be objectively reasonable.  *Id.*  While "[a] general complaint of unfair treatment is insufficient to establish protected activity under Title VII," *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,

450 F.3d 130, 135 (3d Cir. 2006), grievances, formal or informal, relating to discriminatory

conduct prohibited by Title VII will be protected.  Here, Plaintiff complained to his supervisor

about national origin discrimination.  (Second Am. Compl. ¶ 22.)  Plaintiff satisfies the first

prong of the Title VII retaliation inquiry.  As with the discriminatory termination charge, Plaintiff

relies on the termination of his employment as the "adverse action" taken against him.  (*See* Pl.'s

Second Answer ¶ 13.)

In evaluating the third prong, a causal connection between the protected activity and

adverse employment action is established if the plaintiff pleads temporal proximity that is

unusually suggestive.  *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)

(citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)).  Even assuming Plaintiff's

final round of complaints were issued in April of 2007, which requires a liberal reading of

Plaintiff's papers, we do not find the thirty-eight day period between complaints and Plaintiff

being placed on indefinite disciplinary suspension to be unusually suggestive.  *See, e.g., Thomas*,

351 F.3d at 114 (concluding that three-week delay between issuance of complaint and

termination letter was not unduly suggestive); *Garrett v. Atlanticare Health Sys., Inc.*, No. 07-

5416, 2009 WL 3446755, at *5 (D.N.J. Oct. 21, 2009) (finding thirty-seven day gap not unduly

suggestive).[8]

Where the temporal proximity is not unduly suggestive, a plaintiff may provide evidence

of intervening acts to buttress an inference of causation.  *See Farrell v. Planters Lifesavers Co.*,

---

[8]  In this case, thirty-eight days is the shortest possible gap between participation in
protected activity and adverse employment action.  Plaintiff first complained about workplace
discrimination in March 2005, possibly in February 2007, and again in April.  His employment
was not terminated until May 30, 2007.  (Second Am. Compl. ¶ 43.)

206 F.3d 271, 280 (3d Cir. 2000) (requiring the causation element to be analyzed through the record as a whole, and not limited to "timing and demonstrative proof, such as actual antagonistic conduct or animus."). Plaintiff concedes that the only intervening events between Plaintiff's second complaints and his being placed on administrative leave were communications, often initiated by Defendants, to resolve the Human Resources records issue highlighted by Plaintiff. (Second Am. Compl. ¶¶ 34-39.) Taking into consideration the complaints made by Plaintiff at Wyeth, Plaintiff's pleadings do not establish a plausible causal connection between his participation in protected activity and his firing. The most direct evidence to which Plaintiff points is Chandrasekeran's statement, at least one month before Plaintiff's firing, that "people in this department believe that you fit a certain profile and they act on it adversely." (Second Am. Compl. ¶ 23.) This stray remark is insufficient. *Silver v. Am. Inst. of Certified Pub. Accountants*, 212 F. App'x 82, 85 (3d Cir. 2006) ("We note that stray remarks by decisionmakers, unrelated to the decision-making process, are rarely given weight, particularly if they are made temporally remote from the date of the decision."); *see also Carilli v. Mutual of Omaha Ins. Co.*, 67 F. App'x 133, 135 (3d Cir. 2003) (finding that plaintiff failed to link stray remarks by supervisor to decision-makers to establish a pretextual discriminatory termination). We are satisfied that Plaintiff has not stated a plausible claim for retaliation under Title VII.

### B.     Pennsylvania Human Relations Act Claims (Counts III and IV)

Section 955 of the PHRA makes it "an unlawful discriminatory act" for an employer to discharge from employment any individual on the basis of that individual's national origin. 43 Pa. Cons. Stat. § 955(a). Similarly, as an analogue to Title VII, it is an "unlawful discriminatory act" for an employer to "discriminate in any manner against any individual because such

individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." *Id.* at § 955(d).

### 1.    *PHRA Claims Against Defendant Wyeth (Count III)*

"The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) (overruled in part on other grounds by *Burlington N. & Santa Fe. Ry. Co., v. White*, 548 U.S. 53 (2006))).  Accordingly, as with this Court's analysis on Plaintiff's Title VII claims, Plaintiff's PHRA claim against Defendant Wyeth must be dismissed.

### 2.    *PHRA Claims Against Individual Defendants (Count IV)*

Section 955(e) of the PHRA permits a plaintiff to recover from individual employees who aid and abet violations of Section 955 of the PHRA.  43 Pa. Cons. Stat. § 955(e); *Dici v. Com. of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996).  Individual defendants cannot, however, be liable for violations of Section 955(e) if there is no primary violation of the PHRA.  *See Kaniuka v. Good Shepherd Home*, No. 05-2917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006); *Burgess-Walls v. Brown*, No. 11-275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011). Accordingly, Plaintiff's claim against the Individual Defendants must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will granted, and  Plaintiff's

Second Amended Complaint will be dismissed.

An appropriate Order follows.


**BY THE COURT:**


_____

**R. BARCLAY SURRICK, J.**